## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1902.

---

*( Continued from Volume 95.)*

## LENA WINTER, Respondent, v. SUPREME LODGE KNIGHTS OF PYTHIAS, Appellant.

### St. Louis Court of Appeals, August 6, 1902.

1. **Benefit Certificate:** PRESUMPTION OF DEATH: ABSENCE OF SEVEN YEARS: INSTRUCTION: ERROR. Plaintiff sued upon a benefit certificate. Her testimony showed that the insured disappeared more than seven years before, and that he had not been heard from; it appeared, also, that there was a deficit in his accounts as an officer of the lodge, which would have become known on the day following his disappearance: *Held*, error to instruct the jury that if they found that he disappeared and had not been heard of for seven years, "then, in the absence of any rebutting circumstances, he is presumed to be dead."

2. ———: ———: ———. The presumption of death, arising from unexplained absence for seven years, does not necessarily imply that the person died at the end of that period. Circumstances may show the probability of his death at an earlier date.

3. ———: ———: ———. A presumption of death from long absence is not an imperative rule of law where the circumstances of disappearance permit any different inference.

4. ———: ———: ———. Missouri statutes declaring a presumption of death after seven years absence discussed, and held not to destroy the general rule of evidence in regard to said presumption.

5. **By-Laws of Beneficiary Society:** WAIVER OF PROOF. The secretary of a "section" in the Knights of Pythias is the representative of the society concerning payment of premiums and delivering

1—Vol. 96 mo app

blanks for proofs of death. A waiver by him of proofs is valid, in the circumstances described in the opinion.

6. **Proof of Loss:** WAIVER: FURNISHING BLANKS: DENIAL OF LIABILITY. A refusal to furnish blanks on which to make proofs of loss is held a waiver of such proofs, as is also an absolute denial of liability.

7. **Evidence:** COMPETENT WITNESS: DEATH OF AGENT OF BENEFICIARY SOCIETY. Where a transaction takes place between plaintiff and the agent of a fraternal society, and the agent dies, plaintiff is not a competent witness to prove conversations with him tending to show a waiver of the rights of the society.

8. **Practice, Trial:** PRIMA FACIE CASE: ORDINARY CASE: INSTRUCTION. It is improper for the court to declare to the jury that plaintiff has made out a prima facie case, or to advise the jury that it is presumed that every one exercises ordinary care, or that the conduct of a person is presumed to be in conformity to law.

9. **Error:** PRESUMPTION: EVIDENCE: INSTRUCTION. When circumstances in evidence permit the jury to draw an inference adverse to the presumption, it is error for the court to instruct the jury that a presumption exists "in the absence of rebutting circumstances."

10. **Court Can Not Comment on Weight of Evidence.** In Missouri, the court is not permitted to comment upon the weight or credibility of the testimony, nor should it submit a disputable presumption as an imperative rule of law.

11. **Instruction:** ERROR. The mere phraseology of an instruction is not prejudicial error if its practical bearing on the result is correct.

12. **Burden of Proof:** CERTIFICATE OF INSURANCE: PREPONDERANCE OF EVIDENCE. The beneficiary in the insurance certificate in suit had the burden of proof to establish the fact of death by a preponderance of evidence.

Appeal from St. Louis City Circuit Court.—*Hon. Seldon P. Spencer,* Judge.

REVERSED.

*Carlos S. Hardy* and *R. P. & C. B. Williams* for appellant.

(1) An absentee shown not to have been heard of for seven years by persons who, if he had been alive, would naturally have heard of him, is presumed to have been alive until the expiration of such seven years, and to have died at the end of that term. Lawson on Presumptive Evidence, p. 251; Kanz v. Great Council, 13 Mo. App. 341; Lancaster, Adm'r v. Ins. Co., 62 Mo. 128; Hancock v. Ins. Co., 62 Mo. 32. (2) In order to overcome the presumption of life until the end of the seven-year period, it is necessary to show one of two states of facts: first, that when last heard from he was in contact with some *specific peril likely* to produce death; or, second, that he disappeared under circumstances inconsistent with a continuation of life, when considered with reference to those influences and motives which ordinarily control and direct the conduct of rational beings. Lancaster Administrator v. Ins. Co., 62 Mo. 128. (3) In the absence of any fact, except that of the absence of a person for seven years without having been heard from, the presumption is that such person died on the last day of the seven years. Kanz v. Great Council, 13 Mo. App. 341; Whiting v. Nichol, 46 Ill. 230; Reedy v. Miligen, 155 Ill. 636; Bailey v. Bailey, 36 Mich. 181; Smith v. Knowlton, 11 N. H. 191. (4) Evidence of death within seven years need not be direct or positive; it may depend upon circumstances, but the circumstances should be of such a character as to make it more probable that the person died at a *particular time,* than that he survived. Hancock, Adm'r, v. Life Ins. Co., 62 Mo. 32. (5) The fact that there is a legal presumption of death where a person has been absent and unheard of for seven years, was irrelevant in this case. Clark v. Canfield, 15 N. J. (Eq.) 119; Burr v. Sim, 4 Whart. 150; Seeds v. Grand Lodge of Iowa, 61 N. W. 411. (6) "Due notice and proof of death" means, that such notice and proof of death must be furnished within a reasonable time. Carpenter v. Ins. Co., 31 N. E. 1015. (7) The secretary of the section in this case

was a special agent, with limited power, and he had no authority to waive notice and proof of death. Harvey v. Grand Lodge, 50 Mo. App. 472; Boergrafe v. Supreme Lodge, 22 Mo. App. 127. (8) Plaintiff can not claim that she did not know the limits of the secretary's powers, as every member of a benefit society is conclusively presumed to know its laws. Harvey v. Grand Lodge, *supra;* Coleman v. Knights of Honor, 18 Mo. App. 189; Grand Lodge v. Elsmer, 26 Mo. App. 108; Bacon Benefit Societies, sec. 157.

*Lec W. Grant* and *Pierre B. Kennedy* for respondent.

(1) "In relation to the presumption of death arising from mere absence, the rule of common law is well established. Where a party is absent seven years without having been heard of, the only presumption then arising is that he is dead; there is none as to the time of his death—as to whether he died at the beginning or at the end of any particular period during those seven years." Hancock, Adm'r, v. Ins. Co., 62 Mo. 26. This is a clear and lucid statement of the rule at common law, and that rule has never been changed in this State In the same case, page 31, the court says: "All the authorities agree that when a party has been absent seven years since any intelligence has been received of him, he is, in contemplation of law, dead. This length of time may be abridged, and the presumption applied earlier than seven years by showing special facts and circumstances which reasonably conduce to that end." To the same effect, citing Taylor, Stephen, and Greenleaf on Evidence: "Although a person who has not been heard of for seven years is presumed to be dead, the law raises no presumption as to the time of his death." Davis v. Biggs, 97 U. S. 628. (2) It is allowable to show that the party died before the expiration of the seven years, if there is evidence tending to

prove that death occurred at an earlier date, or showing a greater probability of death than life at the prior date. To do so, however, it is not indispensable that the proof offered for that purpose should show the missing person subject to a specific peril at a particular time. It is enough to produce evidence of any other circumstances calculated to shorten or destroy life before the lapse of seven years. Carpenter v, Legion of Honor, 79 Mo. App. 597; Teasdale v. Ins. Co., 26 Iowa 107; Biegler v. American Legion of Honor, 57 Mo. App. 419; Dickens v. Miller, 12 Mo. App. 408. (3) The secretary of a section is the agent of the supreme body and not of the member, and this is so even though the by-laws provide that he is the agent of the member. Supreme Lodge v. Withers, 177 U. S. 260; Modern Woodmen v. Tevis, 111 Fed. Rep. 113; Knights of Pythias v. Bridges, 15 Texas Civil. App. 196. (4) The acts and statements of a local agent may amount to a waiver of the necessity to furnish proof of loss. Nickell v. Ins. Co., 144 Mo. 420; approved in James v. Mutual R. F. L. Ass'n, 148 Mo. 1.

BARCLAY, J.—Plaintiff was the wife of Gustave Winter. She sues on a certificate of membership, in the nature of a policy of insurance for $2,000, issued by the Supreme Lodge, Knights of Pythias of the World. The latter is a fraternal society, incorporated under an act of Congress. The branch or department of the society which conducts the business of insurance is called the "endowment rank." It is managed by a board of control, which deals with the insured members through branches or subdivisions called "sections." The laws, rules and regulations of the defendant require monthly payments to be made upon his certificate by each holder. These installments in the nature of premiums or dues are payable to the secretary of the section to which the member belongs and are remitted by him to the fiscal officer of the supreme lodge or of

the board of control. The monthly payments of the insured are due on the first day of each month without other notice. A·failure of the insured to make the proper payment on or before the tenth day of any month subjects the delinquent member to a forfeiture of his certificate or of his interest therein, unless he be reinstated afterwards upon conditions which need not be recited.

Another feature of the regulations of the society to be noted concerns the proof of death. On that point the by-laws of the society, in force at the time when plaintiff's claim was presented, provide as follows:

"Section 1. The proof of death shall in all cases be made by the beneficiary or beneficiaries on blank forms to be furnished by the board of control, and shall contain affidavits of the attending physician or physicians, the undertaker who officiated, the master of finance as to standing of deceased in the subordinate lodge at the time of death; and from such other person or persons as may be required; affidavits to be made before the officer authorized to take affidavits, and such authority must be certified to by the clerk of a court of record, or other competent authority, under seal.

"Section 2. All necessary legal papers required, in order to secure the proper payment of benefits, must also be furnished by the beneficiary or beneficiaries, and shall be forwarded with the proof of death to the board of control by the secretary of the section."

The certificate which Winter had in the endowment rank was issued in 1885 upon surrender of an older certificate in a different class, taken by him in 1879. He paid all required dues and assessments thereon until and including January, 1894. A payment was afterwards made on his account in February, of that year, which kept the certificate in force to March 10, 1894, after which time it was contended by defendant that the certificate became forfeited under the by-laws of the order. That contention will be conceded for the pur-

poses of this appeal only, subject to the important qualification which is to be discussed in the course of this opinion, the gist of which qualification is found in plaintiff's claim that Winter died before March 10, 1894.

The pleadings require little notice. The petition counts upon the certificate (expressed to be payable to plaintiff), compliance of the insured with the laws and rules of defendant in respect of payments, etc., and the death of the insured on or about January 18, 1894. It further alleges due notice and proof of death given to defendant and makes an offer to surrender the certificate on payment of the amount due, $2,000.

The answer, after the admission of formal allegations and of the issue of the certificate, pleads certain laws already mentioned governing the order and it charges that the certificate has become void for failure of the insured to pay the dues thereon after the month of February, 1894. It sets up as further defenses that no notice of death or proofs of loss were given to defendant within a reasonable time after the alleged death, and that said proofs were not tendered until shortly before this suit, in 1901.

The reply of plaintiff alleged the facts which are claimed to constitute a waiver by defendant of the notice and proofs of loss. These facts will be shown in the course of the opinion.

The trial was had with the aid of a jury.

At the opening of the trial it was admitted that Winter was in good standing in the endowment rank of defendant until March 10, 1894; that nothing was paid on account of his certificate after that date.

The certificate was introduced in evidence without objection.

Plaintiff's case in substance is as follows:

Winter was a tailor. January 18, 1894, about two o'clock p. m., he left his home saying that he was going to see Schlesinger, an employer for whom he had pre-

viously worked for several years.  He was never seen
or heard of again.

Winter married the plaintiff in 1875, in St. Louis,
having emigrated from Germany in 1865.  Plaintiff
came here from the same country in 1871, but she first
met her husband in St. Louis.  He had told her that he
had brothers and sisters in the Fatherland, but she did
not know their residences or names.  She knew of no
other relatives of his in this country but his immediate
family.  He was fifty-six years old at the time of his
disappearance.  His family consisted of his wife, the
plaintiff, and two daughters, aged fifteen and seventeen
years respectively.  They lived in a few rooms on Mar-
ket street.  Prior to 1893 he appeared to have been suf-
ficiently prosperous to give his wife and family the or-
dinary comforts of life and to pay his dues and assess-
ments regularly.  His special branch of work was coat-
making.  He generally worked by the piece.  His wife
occasionally did work for the profit of the family, and
his two daughters were being instructed with a view
to assist in their own maintenance.  He seems to have
been popular with the members of his lodge and was re-
garded by them as a man of integrity.  He is described
by the plaintiff, her daughters and his fellow lodge-
members as having been kind, happy, affectionate,
"jolly and full of life," until a few months before he
disappeared.  He was industrious, of good habits, and
his earnings were kept at home.  Some time before he
left he became very much depressed because he could
find no work.  He grew morose, uncommunicative, and
was evidently unhappy.  He said a few words to a
friend about the burden of his expenses, and exclaimed
to his eldest daughter on the day he left—"if he could
only get work!"

When he failed to return at the usual time, fruit-
less inquiries were made by his family about him at the
morgue, at the Four Courts, at various tailor shops in
St. Louis, and at East St. Louis.  He had taken none of

his clothing, except the articles he wore. Only a few dollars remained in the house. His disappearance was noticed in the St. Louis papers.

For many years he had been master of exchequer or treasurer of the "Pride of the West Lodge" in defendant society; but in December, 1893, an election was held for that office by the lodge and the insured was defeated for re-election by a Mr. Ehrhardt. January 5, 1894, a lodge meeting occurred to install the new officers. Winter was present. He turned over his office and chair to Mr. Ehrhardt, telling the latter that he would settle with him in regard to the funds of the lodge at the next regular meeting night, two weeks later, January 19, 1894. Winter came not at the time mentioned. His mysterious disappearance occurred the day before, as already stated. An investigation of his accounts with the lodge followed. It then developed that there was a shortage to the amount of $196 of funds in his charge as treasurer. The deficit was made good by the sureties on his bond, Messrs. Schmidt and Ehrhardt. The latter was the man who defeated him at the election for treasurer. It is worthy of remark as bearing upon the character of Winter that it appears from the evidence of Ehrhardt, who had to contribute to make up the shortage, that he still entertained a friendly feeling toward his departed brother, notwithstanding the event mentioned, and that the other surety in a like position spoke of him in commendatory terms.

After his disappearance, the lodge passed an order for the suspension of Winter on account of the deficit aforesaid. Efforts were then made by the lodge, independently, to discover his whereabouts by advertisement in the newspapers of the Pythian order in Missouri and in Indiana.

Mr. Gantz was secretary of the section of the society to which Winter belonged. He was a neighbor of the family. He voluntarily advanced the amount due on the certificate for the month of February, 1894.

When the next payment was impending he informed plaintiff that they did not want to take the money, not knowing whether Winter was dead or living.    Soon afterwards (within two or three months after the disappearance) plaintiff again interviewed the secretary with a view to obtain the papers necessary to get her money on the certificate.    After a short delay, the secretary informed her that the board of control had written him that nothing could be done to prove up the claim until seven years had elapsed.    No papers or forms for proofs of loss were furnished to plaintiff. Plaintiff relied on the foregoing statement and made no effort to prove the necessary facts until after the lapse of seven years.    Then plaintiff's attorneys promptly applied to defendant to be allowed to submit proofs of loss, but they were met with an absolute denial of liability.

This suit was thereupon instituted, February 11, 1901, more than seven years after Winter was last heard of.

The defense, so far as material, is shown in the foregoing statement along with the material facts of plaintiff's case in which appeared an outline of the facts on which defendant relies.    It was proved that Gantz, secretary of the section, was dead and that the letters of defendant of the period in question had been destroyed. The fact of Winter's shortage was not disputed.

The learned trial judge, after first refusing a binding direction to find for defendant, gave the following instructions to the jury at the instance of plaintiff:

"1.    Gentlemen of the jury:    If from the evidence you find and believe that prior to February 11, 1901, the date of the commencement of this suit, Gustav Winter disappeared and has not been heard from for seven years, then, in the absence of any rebutting circumsances, he is presumed to be dead, and if you believe from all the circumstances in evidence, considering Gustav Winter's character, habits and antecedents and the

surroundings when he disappeared, that he died prior
to March 10, 1894, and that notice and proof of death
were furnished by plaintiff within a reasonable time
after said Gustav Winter.'s death or within such time as
by the officers of the defendant company she was in-
structed that they should be furnished as hereinafter
explained then your verdict should be for the plaintiff,
in the sum of $2,000 with interest from February 11,
1901.

"2.  If the jury believe and find from the pre-
ponderance or greater weight of evidence that plaintiff,
within a reasonable time after the death of Gustav Win-
ter, if they find that he died prior to March 10, 1894,
applied to Gantz, the secretary of the section to which
the deceased belonged, concerning the necessary papers
with which to prove up her claim, and that said Gantz
shortly thereafter reported to plaintiff that nothing
could be done for seven years, that the officer of the
defendant had written to him that nothing could be done
for seven years, and that plaintiff relied upon such
statements and did not furnish notice and proof of death
until seven years had elapsed for that reason, then the
court instructs you that the notice of death and the
proofs of death have been given in time.

"3.  Unless you find as hereinabove instructed that
Gustav Winter died before March 10, 1894, your verdict
must be for the defendant.  And the burden of proving
such death to have been prior to March 10, 1894, is upon
the plaintiff, that is, she must establish the truth of it
by evidence, which in your judgment outweighs the evi-
dence to the contrary.  Such time of death need not be
proven by direct or positive evidence but may be shown
by all the circumstances attending the disappearance
and the habits, character, antecedents and surroundings
of said Gustav Winter at the time of or prior to his
disappearance.  If the jury believe that such facts es-
tablish such time of death by a preponderance or
greater weight of all the testimony.''

Some requests for instructions for defendant were refused, but they need not be quoted.

The jury gave a verdict for plaintiff for $2,088, on which judgment was rendered, followed by this appeal after the customary steps for that purpose.

1. Defendant's first contention is that the imperative instruction requested on its behalf should have been given.

One ground of that contention is the claim that in event of an unexplained absence for seven years the inference of death includes the further inference that the absent person died at the end of that period and not before. There is color found for that claim in some decisions. It meets a certain measure of approval in a late commentary of an able and accurate writer on the law of presumptive evidence. Lawson, Presump. Evid. (2 Ed.), p. 251. If the inference of death from absence should be drawn according to defendant's contention, it would follow that the certificate in suit became forfeited for want of due payment of monthly premiums during several years after the last payment in 1894. But we deem that contention of defendant to be unsound as applied to the facts in evidence. The weight of authority supports plaintiff's proposition that the inference of death deducible from the absence of Winter during seven years, in the circumstances described, does not necessarily imply that his death occurred at the end of that period. The circumstances of each case are to be weighed. If they warrant an inference of death of the individual in question at an earlier date than the close of the seven years of absence, a finding that the death so occurred may stand. Tidsdale v. Ins. Co., 26 Iowa 170, approved in Hancock v. Ins. Co., 62 Mo. 26, and in Lancaster v. Ins. Co., 62 Mo. 121.

The three cases just cited are authority to sustain the ruling of the learned trial judge in submitting to the jury that issue of fact, whether or not Winter died

before March 10, 1894. The substance of the testimony has been given. We need not repeat it.

Plaintiff was not required to establish beyond a reasonable doubt the fact of the death of the insured prior to the date named. She was required merely to furnish proof which tended to show that fact and to make it appear to the jury more probable or credible than otherwise, that is to say, by the preponderance of the evidence. That she did. Lancaster v. Ins. Co., 62 Mo. 121; Davie v. Briggs, 97 U. S. 628; Rhodes v. Rhodes, 36 Ch. Div. 586; N. W. Mut. Life Ins. Co. v. Stevens, 71 Fed. 258; Garden v. Garden, 2 Houst. 574; Hamilton v. Rathbone, 9 D. C. App. 48; Schaub v. Griffin, 84 Md. 557; Cox v. Ellsworth, 18 Neb. 664.

2. Another ground on which defendant attempts to maintain the correctness of the request for a peremptory instruction in its favor is, that there was no notice or proof of loss furnished as required by the laws of the defendant.

When plaintiff became convinced that her husband was dead, she applied to the secretary of the section for the necessary papers to get her insurance money, as has been described. That officer (after a delay sufficient to permit full communication with the chief officers) sent for plaintiff and informed her that he had "gotten word back, and that we could not do anything in regard to getting the money until the seven years were up." The last quotation is from the evidence of plaintiff's daughter who was allowed to testify concerning that statement of the secretary to her mother. Owing to the death of the secretary, the court excluded the testimony of plaintiff on that point, doubtless under the mandate of section 4632 (R. S. 1899), construed in Williams v. Edwards, 94 Mo. 447.

No blank form for proof of death was furnished to plaintiff in answer to her request, although it was required by one of the by-laws already copied. Before the application to him for the blanks, the secretary told

plaintiff that they did not want to take any more money (meaning insurance dues) not knowing whether her husband was dead or living. On these facts it is quite clear that there was ample support in the testimony for plaintiff's plea of a waiver of proof of death in 1894. Warren v. Town Mut. Co., 72 Mo. App. (K. C.) 188; Grattan v. Ins. Co., 80 N. Y. 281; Hutchinson v. Sup. Tent, 68 Hun 355.

The secretary of the section, whose conduct seems to have been honorable and just to plaintiff and defendant alike, was undoubtedly the representative of defendant in regard to the payment of premium dues and for the purpose of delivering the blanks for proof of death. There is no evidence of any limitation of his authority. The facts disclosed will warrant a finding that he was authorized to represent the defendant in waiving proof of death in 1894. Nickell v. Ins. Co., 144 Mo. 420; McMahon v. Sup. Tent, 151 Mo. 522; Knights v. Withers, 177 U. S. 260; Modern Woodmen v. Tevis, 111 Fed. 113; Knights v. Bridges, 15 Tex. Civ. App. 196 (39 S. W. 333).

3. In regard to the matter of proof of death, proffered by plaintiff's attorneys after the lapse of seven years, the uncontradicted testimony is that at that time defendant repudiated all liability on the certificate. That fact proven dispensed altogether with proof of death of the insured. Jefferson v. Life Ass'n, 69 Mo. App. (St. L.) 126; Pray v. Ins. Co., 104 Iowa 114; Dial v. Mut. Life Ass'n, 29 S. C. 560.

4. The most serious problem in the case arises upon defendant's objection to the first instruction given by the court on behalf of plaintiff. The instruction has been already quoted. The vital point of criticism is directed to the declaration that if the jury found that Winter disappeared and had not been heard from for seven years "then, in the absence of any rebutting circumstances, he is presumed to be dead." The court then proceeds to submit the question whether or not he died

prior to March 10, 1894, but assumes as a fact that he is dead.

One of the most troublesome questions in the practical administration of justice is to determine what mode of instruction is proper in cases where evidence presumptive in its nature comes into play. That sort of evidence is necessary to the attainment of truth. Much care, however, must be observed in its practical use in order not to give undue importance to mere artificial or technical distinctions concerning it. Here we have to deal with the rule of evidence (whatever may be its proper name) that, after a man has been absent from home and unheard of for seven years, the fact of his death may be found upon that showing. When such absence includes departure from Missouri, our statute creates such a presumption in the absence of contrary proof. R. S. 1899, sec. 3144. In the law of bigamy a similar rule obtains, in certain circumstances, to protect a new marriage formed by the spouse deserted by such an absentee as the rule defines. R. S. 1899, sec. 2168. The statute last cited is probably traceable to a British prototype which has been said to have furnished the suggestion for the modern rule or presumption on this subject. Best on Presumptions, *p. 191; Lawson, Presump. Evid. (2 Ed.), p. 254; Thayer, Evid., 319.

Another Missouri statute provides a method intended. to secure administration upon estates of such absentees. In another jurisdiction an act with similar features has undergone a severe ordeal. Scott v. McNeal, 154 U. S. 34. We have nothing now to do with the validity of that statute. We mention it only to refer to the evident drift of legislative purpose, which postpones the steps of such a proceeding until seven years after the disappearance, a much later time than was prescribed by the Code of Napoleon, which made provision for a similar process beginning at the end of

four years. R. S. 1899, sec. 265; Code Napoleon, bk. 1, tit. 4, 115.

We refer to these pieces of legislation to indicate how firmly has taken root in our law the idea that a presumption of death arises from an unbroken and unexplained absence of seven years. The particular rule, however, defined by section 3144 (R. S. 1899), which does not by its terms quite reach the case at bar, has been definitely held in Missouri not to lessen the force of the general rule of evidence on the subject as disclosed by decisions expounding the common law. Flood v. Growney, 126 Mo. 262; Biegler v. Supreme Council, 57 Mo. App. (St. L.) 419. Many careful commentators on the rule of presumption in question have taken pains to demonstrate that it is little more than a measure established by experience to mark the amount of evidence which shall make out a prima facie case when an issue of the death of an absentee has arisen. Thayer, Evid., 323, 336; 1 Greenleaf, Evid. (16 Ed.), sec. 41; Wharton, Evid. (3 Ed.), sec. 1275.

Where circumstances are in evidence which permit a reasonable inference that the person in question is not dead, though lost to sight and unheard of for seven years, the law does not presume that he is dead. The presumption, as it is termed, is a rule of evidence which determines the sufficiency of certain facts to discharge the burden of proof from the party on whom it is placed by the pleadings. When those facts appear, the burden is discharged until something else is disclosed. If, however, the facts which exhibit the long absence exhibit also ground for a fair inference that the absentee is alive, or to conflicting inferences on that point, then it is for the jury or triers of the fact to say what is their conclusion from the testimony on that issue.

In actions of the sort now under review, the law of our State forbids comment by the court to the jury upon the weight or credibility of the testimony. Speed v. Herrin, 4 Mo. 356; Schneer v. Lemp, 17 Mo. 142;

Jones y. Jones, 57 Mo. 138.    Hence, it is important for
the court to avoid declaring as an inflexible rule of law
any mere deduction of fact which the jury are at liberty
to draw or to reject in performing their function of
determining the weight and truth of the testimony sub-
mitted by the parties.

Many decisions illustrate the strictness in which
our courts have enforced the precept that it is error
to give to a jury a disputable presumption as an im-
perative mandate of law where the testimony permits
any other inference.

In Garesche v. Boyce, 8 Mo. 228, which was an
action in trover for the value of some cordwood, defend-
ant offered no evidence, and the Supreme Court held
that an instruction to the jury would be erroneous which
declared, in view of certain evidence partly oral, that
plaintiff had prima facie title to the land on which the
wood was cut.

In Ham v. Barrett, 28 Mo. 388, the court defined
presumptions of law as those which "exclude all con-
trary proof," and presumptions of fact as those which
"may be raised or not as the jury may determine," and
then held that a trial court is not warranted in declaring
a presumption of fact "as a presumption authoritatively
raised by law, but should direct them that from the evi-
dence it is their province to determine whether they
will raise the presumption or not."    That ruling has
been fully approved in many later decisions of which
we mention a few.    Erhart v. Dietrich, 118 Mo. 418;
Bluedorn v. Railroad, 121 Mo. 258; Burkholder v. Hen-
derson, 78 Mo. App. (St. L.) 295.

In a number of instances, instructions have been
condemned for telling the jury in negligence cases that
the law presumes every man to exercise ordinary care,
or equivalent language expressing as a rule of law the
idea that the conduct of an intelligent person is pre-
sumed to be in conformity to law until the contrary is
shown.    That rule is declared to be a "presumption of

law'' in Klein v. Landman, 29 Mo. 259. But the statement of it in the form aforesaid has been held erroneous in a number of cases, some of which we mention, more could be cited. Palmer v. Railroad, 76 Mo. 221; Myers v. City, 108 Mo. 480; Lynch v. Railway, 112 Mo. 420; Schepers v. Railroad, 126 Mo. 665; Nixon v. Railroad, 141 Mo. 425.

These decisions are all positive authority for the proposition that in the face of evidence permitting an inference contrary to a disputable presumption, it is not correct to throw the presumption into the scale, as it is said, in giving the law to the triers of fact.

The admitted circumstances of the disappearance of Winter should not be held to exclude every other inference than that of his death. On the facts recited in the opening lines of the plaintiff's first instruction, it was not a conclusion of law that he was dead. It was for the jury to say that they believed from the evidence that he was dead. The burden of proof was on plaintiff to prove his death. The court wholly removed that burden and left plaintiff only the minor one of showing that his death occurred prior to March 10, 1894. It will not be needful to repeat the facts to indicate why another inference than that of his death would have been reasonable and permissible. His unhappy predicament, disclosed by the testimony, leaves his fate a matter of conjecture; but more than one conjecture concerning it was open to the jury and was reasonable, as other cases which deal with similar circumstances manifest. N. W. Mut. Life Ins. Co. v. Stevens, 71 Fed. 258; Sensenderfer v. Ins. Co., 19 Fed. 68.

It is true that language similar to that under review, concerning the presumption of death from absence, is found in an instruction quoted in Hancock v. Ins. Co., 62 Mo. 30. But it should be remembered that the judgment in that case was reversed on other grounds. Nothing in the opinion of the court indicates

that the points of criticism here discussed were then considered.

The remark in the case at bar in the first instruction touching the "absence of any rebutting circumstances," in connection with the statement that Winter "is presumed to be dead," eliminated the probative force of the circumstances which gave ground for a different inference than that of death. The remark intensified the error and bound the jury more firmly to the proposition that they were to accept the death of the insured as a fixed fact, if they found he had been absent and unheard of during the seven years.

The true rule to be deduced from the authorities is, that the inference of death arising from an unexplained absence of seven years, is not a conclusive inference. It yields to the influence of a conflicting presumption of the same class and of more specific character, as, for example, the presumption of innocence in the conduct of the party in question, illustrated by cases where these two presumptions have been found to antagonize. King v. Inhabs, 2 A. & E. 540; Lancaster v. Ins. Co., 62 Mo. 129. The deduction which may be drawn from the absence of a person for seven years without tidings supplies the place of more specific proof of death. It warrants a jury in finding the fact of death, after due consideration of all the other facts in evidence, but it is not a conclusion which the jury are obliged to draw, in the face of proof which furnished ground for other inferences. It should not be stated to the jury as a rule of law imposing an imperative obligation upon them in a case like this. Mut. Ben. Life Ins. Co. v. Martin, — Ky. — (55 S. W. 694) ; Rochford v. Jackson, 1 W. W. & a'B. (L.) 23.

The mere fact that the word "presumed" was used is not decisive of the matter, however. If the rule had been stated in the instruction correctly, in its practical bearing on the result, the form of the charge in that particular might not have been prejudicial. But the

error lay in declaring that from the preliminary facts along the insured was presumed to be dead and in implying the absence of any rebutting circumstances.

For the error above noted the judgment must be reversed and the cause remanded. It is so ordered. *Bland, P. J.,* concurs; *Goode, J.,* dissents.

### DISSENTING OPINION.

GOODE, J.—The instructions given by the learned circuit judge and quoted in the majority opinion do not strike me as being fairly open to the criticism that they told the jury Winter was presumed, incontrovertibly, to be dead and submitted for their finding on the evidence only the question of when he died, nor to the further criticism of assuming there were no facts connected with his disappearance which tended to rebut the presumption of death arising from his absence for seven years without his family receiving tidings of him. The lack of tidings for that period undoubtedly raised the presumption of death; for it was said in Hancock v. American Life Insurance Co., 62 Mo. 26: "All the authorities agree that when a party has been absent seven years since any intelligence has been received of him, he is in contemplation of law, presumed to be dead," and this rule is reiterated in that authority several times in substantially the same language and is generally accepted by the courts. 1 Greenleaf, Evid. (16 Ed.), sec. 4; Thayer, Evid., p. 319. But the legal presumption of the death of a person from his unexplained absence from home for seven years is a disputable one and may be rebutted by any circumstance connected with his disappearance or failure to return which satisfies the triers of the fact that he is still living. But it is a presumption which the law raises, subject to rebuttal, from his absence without news of him and is not a mere inference of fact.

In this case, the circumstance that Winter was in

arrears as treasurer of the lodge when he disappeared, while it would not prevent the disputable legal presumption of death from arising [Mut. Ben. Life Ins. Co. v. Martin, 55 S. W. (Ky.) 694] and shifting the burden of proof to the defendant to show he was alive, was competent evidence for the jury's consideration in determining whether he was alive or dead [19 Am. and Eng. Ency. Law (1 Ed.), page 46, and cases cited] and, in my opinion, that circumstance was not withdrawn from their consideration by the first instruction, but was carefully submitted by that one, as well as by the other two, in language which referred to them all the facts of his character, habits and disappearance as means of ascertaining whether or not he had died. In fact, all three of the instructions required the jury to find from the evidence that Winter died prior to March 10, 1894, as the condition, and the sole condition, on which they might return a verdict for the plaintiff; which was according to law, for there is no presumption as to the time at which a person absent and unheard of for seven years, died. Hancock v. Ins. Co., supra. It is said, however, that the instructions assumed he was dead instead of submitting that issue to the jury for a finding, but they only assume it to the extent the law does; namely as a disputable presumption, subject to disproof.. And it seems to me oversubtle to say that an instruction requiring them to find that he died did not likewise require them to find he was dead. Moreover, the force of this objection to the instructions, however strong it might be if a long interval separated the date of his disappearance from the date when he must be found to have died for this action to lie, is diminished to the vanishing point by the fact that Winter disappeared January 18, 1894, and the jury were told in three charges that they must find he died prior to March 10, 1894, or less than three months after his disappearance, which, as to all questions arising in this case, was equivalent to charging them that they must find from the evi-

dence that his death occurred simultaneously with his disappearance. In other words, the jury in effect were told they must find his death as a fact from the proof before them. Hence, if there was error in the following portion of the first instruction: "If from the evidence you find and believe that prior to February 11, 1901, the date of the commencement of this suit, Gustav Winter disappeared and has not been heard from for seven years then, in the absence of any rebutting circumstances, he is presumed to be dead" (which I do not concede but believe the law as there declared is supported by Hancock v. Ins. Co., supra), it was at most a harmless error; and this is especially true in view of the first paragraph of the third instruction which reads as follows: "Unless you find as hereinabove instructed that Gustav Winter died before March 10, 1894, your verdict must be for the defendant."

As the instructions given were correct while all those refused were faulty, according to my understanding of the law, I think the judgment in this cause should be affirmed.