IN RE ESTATE OF RALPH S. BUCK, deceased, ST LOUIS UNION TRUST COMPANY, Executor, Appellant, v. MARIE V. BUCK, Administratrix of the Estate of RALPH B. BUCK, Respondent.

St. Louis Court of Appeals. Opinion Filed April 6, 1920.

1. APPELLATE PRACTICE: Finding of Fact by Court Sitting as Jury: Effect. Where the parties waive a jury and submit questions of fact to the court and there is evidence in the record sufficient to warrant the finding of the court on the questions of fact, that finding, like the verdict of a jury, will not be disturbed.

2. WILLS: Legacies: Legatee Dying Before Testator: Legacy Lapses. Unless a legatee died subsequent to the date of the death of his testator, his administratrix would not be entitled to have the legacy paid to her as such.

3. EXECUTORS AND ADMINISTRATORS: Legacies: Death of Legatee Subsequent to Testator's Death: Burden of Proof Rests on Administratrix Claiming Title to Legacy. The burden of proof rests on an administratrix claiming title to a legacy to prove that at the time of the trial her intestate was dead and that he died subsequent to the date of the death of the testator.

(1)

4. **DEATH: Disappearance: Common Law Presumption of Death From Absence: Applies to Non-resident.** While the claimant, administratrix, cannot rely upon the statutory presumption of death as provided in section 6340, Revised Statutes 1909, for the reason that her intestate did not reside in the State of Missouri, and did not go from this State and fail to return here for seven consecutive years, still there remains in this State, outside of this statute, the common law presumption that the seven-year unexplained absence raises a presumption of death.

5. ———: ———: ———: **No Presumption as to Time of Death.** The law raises no presumption as to the time of death during the seven-year period; there being no presumption as to whether intestate died at the beginning or at the end of the period, or at any particular time within the period.

6. ———: ———: ———: **Evidence: Letters of Administration Prima-facie Evidence of Death.** Letters of administration are prima-facie evidence of the death of the person on whose estate they are issued, however, the prima-facie case thus made is of the weakest and most inconclusive character, and slight evidence that the person was still living when the letters were granted would be sufficient to overthrow the presumption of death arising from the grant of letters.

7. ———: ———: ———: ———: **Evidence Insufficient to Rebut Presumption of Death from Seven Years' Absence.** Testimony of a mother giving facts and circumstances surrounding the disappearance of her son, etc., *held* not sufficient to rebut the prima-facie case made by the issuance of letters of administration on his estate and the presumption of death raised by the seven-years' unexplained absence.

8. ———: ———: ———: ———: **Legacies: Legatee Surviving Testator: Sufficiency of Evidence.** In an action by an administratrix, claimant for a legacy, etc., where the evidence surrounding the disappearance of her intestate indicates that he ran away from home to get away from restraints put around him by his father and was a strong, healthy boy when he disappeared about fourteen months before the testator's death, together with the presumption that one holds on to his life as long as possible, etc., *held* sufficient to support the finding of the court sitting as a jury that he was dead and that he survived the testator.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*Charles M. Polk,* for appellant.

(1) As Ralph B. Buck did not reside in Missouri at the time of his disappearance, and there is no showing that he ever was a resident of Missouri, the statutory presumption of death does not arise, the presumption, if any, being under the common law. R. S. 1909, secs. 271, 6340; Carter v. Metropolitan Life, 155 Mo. App. 368, 374; Bradley, v. Modern Woodmen, 146 Mo. App. 428, 440. (2) The absence of Ralph B. Buck was voluntary; it is fully explained by his dislike of his father, his refusal to work for his father, and his announced intention of running away; he has not been shown to have been in any risk of life; therefore, the presumption of his death does not arise. Dickens v. Miller, 12 Mo. App. 408; Beegler v. American Legion,| 57 Mo. App. 419, 423; Bradley v. Modern Woodmen, 146 Mo. App. 428, 442. (3) Unless Ralph B. Buck survived the testator his administratrix could not have become entitled to the legacy to him. The burden of proving that survivorship, upon which her right to the legacy depends, is upon her, for it is a fact which she must establish affirmatively, or her title will fail. In re Phene's Trust, L. R. 5 Ch. 139.; In re Aldersey, 2 Ch. 181; Bradley v. Modern Woodmen, 146 Mo. App. 428, 443; Hancock v. Am. Life Ins. Co., 62 Mo. 26; Winter v. K. of P., 96 Mo. App. 1, 12.

*W. B. & Ford W. Thompson* for respondent.

(1) When a person is known to be alive at a certain time there is a presumption of the continuance of his life, and whoever finds it important to establish death at any particular period must overcome the presumption by evidence tending to show at what period he died. Hancock, Admr., v. American Life Ins. Co., 62 Mo. 26, 34; Winter v. Supreme Lodge Knights of Pythias, 101 Mo. App. 550, 551; Carpenter v. Supreme Council Legion of Honor, 79 Mo. App. 597.; Springmeyer v. Sovereign Camp Woodmen of the World, 144 Mo. App. 483, 487;

Bradley v. Modern Woodmen of America, 146 Mo. App. 428, 444; Walsh, Admr., v. Metropolitan Life Ins. Co., 162 Mo. App. 546, 553, and cases cited therein. (2) The evidence conclusively shows that Ralph S. Buck, deceased, the testator, died in 1910; that prior to his death his nephew, who is the legatee under his will, disappeared and has never been heard from since the 20th day of August, 1909. The executor of the will of Ralph S. Buck claims that the legacy lapsed for the reason that there is no evidence that the nephew outlived his uncle. There is no evidence in the record that the nephew at any time had been brought into contact with any sudden or serious danger, or any risk of life or limb, and therefore no evidence tending to show that he died before his uncle. He disappeared August 20, 1909; his uncle died November 11, 1910. See cases cited under Point 1, supra. The most recent case upon this subject, and one which analyzes all of the prior decisions of this State, is that of Walsh, Administrator, against the Metropolitan Life Insurance Company, 162 Mo. App. 546, 553. (3) The judgment of the probate court relative to the issuance of letters of administration cannot be collaterally attacked. "It is now well-established law in this jurisdiction that the orders and judgments of our probate courts, made in the exercise of their statutory powers over subjects conferred upon them by law, are entitled to the same favorable presumptions arising from either the affirmative statements, or the silence of their records, as are accorded in similar cases to the circuit courts." Johnson v. Beazley, 65 Mo. 250; Henry v. McKerlie, 78 Mo. 429; Camden v. Plain, 91 Mo. 117; Rottman v. Schmucker, 94 Mo. 144; Price v. Springfield R. E. Assn., 101 Mo. 107; Williams v. Mitchell, 112 Mo. 308, 309; Macey v. Starke, 116 Mo. 494; McKenzie v. Donnell, 151 Mo. 450; Cox v. Boyce, 152 Mo. 586; Covington v. Chamblin, 156 Mo. 587; Starke v. Kirchgraber, 186 Mo. 646; Robin v. Boulware, 190 Mo. 51; Desloge v. Tucker, 196 Mo. 601; Ansell v. Bridge Co., 223 Mo. 227; Spicer v.

Spicer, 249 Mo. 458-9; Norton v. Reid, 253 Mo. 251; Wilson v. Wilson, 255 Mo. 536, 537; Bingham v. Kollman, 256 Mo. 589; Harter v. Betty, 266 Mo. 296; Summer v. Cordell, 187 S. W. 7, 8; Fitzgerald v. De Soto Special Road District, 195 S. W. 696; Thompson v. Pinnell, 199 S. W. 1013; Nodaway County v. Williams, 199 S. W. 226; All of these cases are cited in the case of Oldeker v. Spiking, 210 S. W. 62.

BIGGS, C.—This cause originated in the probate court of the City of St. Louis and arises out of an application of Marie V. Buck, Administratrix of Ralph B. Buck, addressed to that court asking that the St. Louis Union Trust Company, Executor of Ralph S. Buck, be ordered to distribute to her as such administratrix a certain legacy bequeathed to Ralph B. Buck by the Will of Ralph S. Buck as follows:

"I give and bequeath to my nephew and namesake Ralph B. Buck the sum of two thousand dollars, which I desire my executors shall pay over to the St. Louis Union Trust Company to be invested, managed and controlled by said company during the minority of my said nephew, and during his said minority the net income of profits arising from said principal sum of two thousand dollars shall be added to the principal, and the whole amount of principal and accumulated income shall be paid over to my said nephew by said Trust Company, when he reaches the age of twenty-one years, to be his absolutely."

The probate court and, on appeal, the circuit court (a jury being waived) sustained the application and ordered the Trust Company as executor aforesaid, to pay the legacy to Marie V. Buck as such administratrix. From this order and judgment the Trust Company as such executor has appealed here, contending that the evidence is insufficient to warrant the trial court in finding (1) that Ralph B. Buck is dead, and (2) that if dead, that he died subsequently to the date of the death of his uncle Ralph S. Buck, for unless Ralph B.

Buck survived his uncle the legacy lapsed, and the administratrix of his estate could not lay claim to same.

Ralph S. Buck, the uncle, died November 11, 1910. Ralph B. Buck, the nephew, was born November 14, 1892, and disappeared August 20, 1909 when about seventeen years old, and has never been heard from since.

After waiting a period of more than seven years, the boy's mother, Marie V. Buck, applied to the probate court and was granted letters of administration on his estate. Appellant admits that Marie V. Buck is the duly appointed, qualified and acting administratrix of the estate of Ralph B. Buck.

The only testimony submitted by either party was that of Marie V. Buck, the mother, and that is as follows:

"I am Marie V. Buck, the widow of Stephen B. Buck and the mother of Ralph B. Buck. I was married to Stephen B. Buck, February 17, 1892, at Wheating, Illinois. My son, Ralph B. Buck, was born November 14, 1892. I was living in Denver, Colorado, at the time my son disappeared. He disappeared August 20, 1909. He went to his work in the morning, and I never saw him afterwards. He was then sixteen and a half years old, and was working as a bell boy in a boarding house, getting Twenty ($20) Dollars a month. He had only worked there a couple of weeks. Before that he had worked for a paper concern of the name of Heckel's Paper Company. He had only worked all together seven or eight weeks. He had been at school before that, and he had been with me and my husband until that time. He had always wanted to run away. He had always talked about—of course, his father wanted to control him and he was uncontrollable. I think perhaps he wanted to go to sea; he used to read a book "Newdy Newman, the Boy that Went to Sea," and used to read that book continually over and over, and I think perhaps he wanted to do something like that. Perhaps the book encouraged him in some way.

"Once he started to go away with a boy by the name of Charles McSwain who worked down on the ranch for us. He only got a couple of miles and then came back. We didn't know anything about it at the time, but Ralph told me afterwards.

"Once he ran away and stayed over night because he swore at his father, and his father whipped him with a buggy whip, and he stayed away that night and came back the next morning; that was out on the ranch; he didn't go to anyone's house, he just went down to what we call the irrigation ditch, and he came to the kitchen door and knocked and asked where father was, and I told him I had fixed it up with his father and that his father wouldn't punish him, and he should come in; and his father didn't punish him.

"He had called his father a very severe name, and his father had whipped him with a buggy whip, and I took the buggy whip away from his father. This was about a year or nine months before Ralph disappeared. After that Ralph did not want to go to the military school; didn't want to go to any school, and his father was determined; and of course I tried to take Ralph's part. I shouldn't have done it, but I did.

"Just before Ralph disappeared the last time, his father told him he was going to Kansas City and go in business, and if he wouldn't go to school he would put him in the factory; he expected to go in the stove business, something of that kind, and he would put him through right from the floor on up, and he would have to do that or do something; that he had his mind made up. And he told me he wouldn't work for his father or his uncle, they both made him nervous, and he was going to run away, and I asked him, I said, 'Would you leave me?' and he said, 'No, I wouldn't.' I didn't believe he would.

"There had not been any trouble with his father for about a week before he disappeared. He didn't want his father to control him. He thought he was a man. He was a large boy for his age and was very bright. He had never done anything bad, but was just wild. He

thought ·he knew as much as his father did, like all American boys.. I have never heard anything from him since he disappeared. The earth seemed to open up and swallow him. I have never received any letters, and not to my knowledge has any other member of the family heard from him.''

As heretofore stated, the parties herein waived a jury and submitted the questions of fact involved to the court. No complaint is made against the declarations of law given by the court, and if there is evidence in the record sufficient to warrant the finding on the question of fact, that finding, like the verdict of a jury, will not be disturbed.

The lower court necessarily found from the foregoing evidence that at the time of the trial Ralph B. Buck was dead, and that he died subsequent to the date of the death of his uncle, Ralph S. Buck, for otherwise the respondent, Marie V. Buck, his administratrix, would not be entitled to have the legacy paid to her as such. And upon both questions of fact involved the burden of proof rested on Marie V. Buck who is claiming title to the legacy. [In re Phene's Trust, L. R. 5 Ch. 139; In re Aldersey, 2 Ch. 181; Bradley v. Modern Woodmen, 146 Mo. App. 428, 124 S. W. 69; Hancock v. Insurance Co., 62 Mo. 26.]

There is no dispute about the aforesaid facts, and the only question involved is whether or not those facts are sufficient to warrant the finding of the court, sitting as a jury, to the effect that Ralph B. Buck was dead and died subsequent to the date of the death of his uncle, Ralph S. Buck. In considering the question certain presumptions of the law come to the aid of the claimant for the legacy. On the question as to whether or not Ralph B. Buck was in fact dead at the date of the trial, the court had a right to call to its aid the common-law presumption that, after an unexplained absence or disappearance for a period of seven years, a man is presumed to be dead. While it is true in the present case that the claimant, Marie V. Buck, cannot rely upon

the statutory presumption of death as provided in section 6340, Revised Statutes 1909, for the reason that Ralph B. Buck did not reside in the State of Missouri and did not go from this State and fail to return here for seven consecutive years, still there remains in this State, outside of this statute, the common-law presumption that a seven years' unexplained absence raises a presumption of death. [Winter v. Supreme Lodge, 96 Mo. App. 1, 16, 69 S. W. 662; Flood v. Growney, 126 Mo. 262, 28 S. W. 860; Biegler v. Supreme Council, 57 Mo. App. 419.] The law, however, raises no presumption as to the time of death during the seven-year period, there being no presumption as to whether he died at the beginning or at the end of the period or at any particular time within the period. [Hancock v. Insurance, 62 Mo. 26; Bradley v. Modern Woodmen, supra; Winter v. K. of P., 96 Mo. App. 1.]

In addition to this, it was admitted that letter's of administration had been issued by the probate court upon the estate of Ralph B. Buck. In the case of Lancaster v. Washington Life Ins. Co., 62 Mo. 121, 1. c. 127, it is held by our Supreme Court that letters of administration are prima-facie evidence of the death of the person on whose estate they are issued. As stated, however, by the Supreme Court, the prima-facie case thus made is of the weakest and most inconclusive character, and slight evidence that the person was still living when the letters were granted, would be sufficient to overthrow the presumption of death arising from the grant of letters. This Lancaster case on the point referred to has not been criticized, and was followed by the Kansas City Court of Appeals in the case of Davis v. Gilligan, 71 Mo. App. 498.

On the affirmative of the issue of the death of Ralph B. Buck, we have the foregoing common-law presumption of death after seven years' absence, and in addition the fact that letters of administration were granted on his estate. This made a prima-facie case, and the evidence of Marie V. Buck giving facts and circum-

stances surrounding the disappearance of her son, Ralph B. Buck, is not sufficient to absolutely rebut the prima-facie case so made, and hence it could not be said by us that there was no evidence to support the court's finding on this question.

On the issue as to whether the nephew, Ralph B. Buck, survived his uncle, the court below had a right to presume, as the law does, that a condition once shown to exist is presumed to continue, so after proof of existence of life, there is a presumption of the continuance of life. [Hancock v. Insurance Co., 62 Mo. 26; Greenleaf on Evidence, sec. 41; 19 Am. & Eng. Ency. of Law, page 74.] There is also a presumption against suicide, as it is the experience of mankind that one holds on to his life as long as possible. These presumptions are, of course, rebuttable and can be overcome by evidence. Can it be said in the present case they were overcome by the testimony of Marie V. Buck as to the circumstances and facts surrounding the disappearance of her son? We think clearly not, as that evidence clearly tends to show that Ralph B. Buck did not die previous to the date of the death of his uncle. The facts surrounding his disappearance clearly indicate that he ran away from home to get away from the restraints put around him by his father, and being a strong healthy boy it is reasonable to suppose he lived beyond the date of his uncle's death, November 11, 1910, he having disappeared in August, 1909. Of course, it may be that he is not in fact dead at this time and is still adrift and his whereabouts wholly unknown. That fact cannot be known absolutely to a certainty. Being short of the actual proof as to the fact, the question must be left to either the jury or to the court, sitting as a jury, to say what the reasonable probability of the matter may be. That was done in this case, and our authority to interfere will not and cannot be exercised, unless there has been error in a matter of law at the trial. No contention is made that the court erred, either in the admission of evidence, or in the giving of declarations of law.

The learned trial judge having ruled these questions of fact in favor of the claimant, and in view of the fact that there is substantial evidence to warrant the findings, the Commissioner recommends that the judgment should be affirmed.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed.

*Reynolds, P. J., Allen* and *Becker, JJ.,* concur.