DANIEL J. HANCOCK, ADM'R OF HENRY C. MORRIS, Respondent, *vs.* THE AMERICAN LIFE INSURANCE COMPANY, Appellant.

1. *Evidence—Absence for seven years—Presumption as to time of death.*—Where one has been absent and unheard of for seven years, the presumption arises that he is then dead, but not, that he died at any particular time theretofore. To raise the latter presumption, special facts and circumstances should be shown, reasonably conducing to that end. The evidence need not be direct nor positive; but it should be of such a character as to make it more probable that he died at a particular time, than that he survived.

2. *Evidence—Life, presumption as to continuance of.*—When one is known to be alive at a certain time, there is a presumption of the continuance of his life after that period which must be overcome by some sort of proof.

3. *Evidence—Sudden disappearance, etc.—Inference as to death.*—Where one studious in habits, attentive to business, with a fixed and permanent residence and pleasant domestic relations, suddenly disappears, these facts may warrant a jury in finding his death at the time.

4. *Evidence—Insurance—Disappearance of assured, circumstances attending—Presumption as to death arising from.*—In suit brought about the year 1871, on a policy of life insurance, wherein the company put in issue the death of the assured and set up the forfeiture of his policy by failure to pay a premium note which had matured June 8th, 1861, it appeared in evidence that the assured was unmarried and without a fixed place of abode; that he disappeared about March 1st, 1861, from his boarding-place at New York, with the declared intention of going to Brooklyn, and did not return; that he left behind clothes and a valise of no great value; that prior to his disappearance he had been in the habit of writing to his friends and relatives, but was not heard of afterward; that he had lived for years in different states of the south, and had announced his intention of going thither to take up arms in her defense, and expressed on the other hand no design of making his residence in New York. *Held*, that under such state of facts, although the assured had been unheard of for more than seven years, the proof was insufficient to raise a presumption of the death of the assured prior to the maturity of the note, and the company could not be held.

## *Appeal from St. Louis Circuit Court.*

*Glover & Shepley, with Martin & Lackland*, for Appellant.

I. There is no presumption in law that Henry C. Morris died prior to June 8th, 1861, having been last seen March 1, 1861. (2 Greenl. Ev. [Redf. Ed.] § 278.)

II. The burden of proving that he died before June 8, 1861, was upon the plaintiff. There is no evidence in the

record of his death prior to that time. (*In re* Bentham's Trust, L. R. 4 Eq., 415 ; Newman vs. Jenkins, 10 Pick., 519 ; Spencer vs. Roper, 13 Ired., 333 ; Smith vs. Knowlton, 11 N. H., 197 ; Robinson vs. Sweet, 26 Me., 378.)

III. There is positive evidence of his having been seen since June 8, 1861, and of his having written a letter dated in September, 1861.

IV. The court ought not to have rendered any judgment on the verdict. The petition contains no cause of action. The policy says no money is payable on it till "after satisfactory proof of death." The petition says no such proof of death was ever made.

The averment in the petition, that due proof was furnished, does not help the case. The proof would not do unless it was according to the policy. (State vs. Marshall, 36 Mo., 401 ; State vs. Matson, 38 Mo., 489 ; Hopp vs. Stone, 39 Mo., 378 ; Mortland vs. Halton, 44 Mo., 64.)

*Geo. P. Strong*, for Respondent.

I. Absence from his usual place of residence for seven years, without being heard from, is presumptive evidence that the party is dead. (1 Phil. Ev., [4th Am. Ed.] 640–41, and notes 184, 5 ; Id., 264, notes ; Id., 599 ; Bliss Life Ins., [2d Ed.] 326, 327.)

II. The general belief of a family, that a missing member is dead, is admissible in evidence, as in many cases it is not only the best but the only evidence which can be supposed of his death. (Jackson vs. Etz, 5 Cow., 319 ; Doe vs. Griffin, 15 East., 393 ; Jackson vs. Boneham 15 Johns., 226 ; 1 Greenl. Ev. [2d Ed.], §§ 201, 574.)

III. It was for the jury to determine from all the circumstances of the case, at what time Henry C. Morris died. The presumption of death arising from seven years absence does not fix the date of death at any particular point of time during the running of the seven years. (Bliss Ins., [2d Ed.] 326–7 ; Best Pres. Ev., 45 Law Lib., 171 ; Mathews Presum. Ev., 291 ; 1 Taylor Ev., pp. 127, 128, § 125 ; Stonvenal vs.

Stephens, 2 Daly, [N. Y.] 319 ; Knight vs. Nepeau, 5 Barn. &
Ad., 86 ; S. C., 2 M. & W., 894 ; Burr vs. Linn, 4 Whart.,
171 ; Smith vs. Knowlton, 11 N. H., 197 ; Whiting vs. Nich
olls, 46 Ill., 241 ; Ang. Fire & Life Ins., 379, § 351 ; Tis-
dale vs. Conn. Mut. Life Ins. Co., 26 Iowa, 171 ; S. C., 28 Iowa,
12 ; White vs. Mann, 26 Me., 370.)

WAGNER, Judge, delivered the opinion of the court.

Plaintiff in his petition alleged that he was administrator
of Henry C. Morris, deceased, and that defendant, by its policy
dated June 8th, 1860, in consideration of — dollars, paid and
secured to be paid by deceased, assured his life in the sum of
$5000 for the term of his natural life, and promised and agreed
well and truly to pay, or cause to be paid, said sum of money,
to the heirs, executors, administrators and assigns of the said
Morris, within sixty days after due notice and satisfactory proof
of his death ; that said Morris died suddenly in New York city
on or about March 1st, 1861, and has never been heard of since.
There was a further averment, that after due inquiry and
search, the heirs and relatives of Morris had been unable to
ascertain the particulars of his death, and unable to give to
the company such proof and notice of his death as was men-
tioned and specified in the conditions or directions indorsed
on the policy ; that the heirs and legal representatives of the
deceased Morris did, at divers times, give due notice and fur-
nish proof of his death ; and that more than seven years had
elapsed since any of the family, or friends, or relatives, or ac-
quaintances of Morris had heard from or of him.

The answer denied all the allegations of the petition, ex-
cept that a policy was made insuring the life of Morris for
$5000.   It set up as new matter, that the policy contained
the following provision :  "that in case said Henry C. Mor-
ris should not pay the premiums hereinbefore specified, on or
before the days specified and appointed for the payment of
the same, or shall fail to pay the interest on said premium
note when due, then said policy shall be void."   The answer
then alleged that the policy was issued in consideration of

the annual premium of $162.50, payable June 8th, in each year, and that said premium falling due June 8th, 1861, was never paid, and the policy became void.

The reply averred that Morris died before June 8th, 1861, and that before the premium of that date became due, he had departed this life.

A question was made here whether the notice of death was given in time, or, in fact, whether there was any sufficient notice given at all. But from the view that we have taken of the case, that question becomes unimportant and immaterial. The main question is, when did Henry C. Morris die? Unless his death occurred prior to June 8th, 1861, there can be no recovery, as the premium due at that date was not paid, and if he was then living, its non-payment worked a forfeiture of the policy. Before considering the instructions given by the court, it will be necessary to advert briefly to the evidence.

It appears that Henry C. Morris was a single man; that for many years previous to his alleged death, he had been in the habit of spending his time in the south, engaged in mining and speculations; that he left the south and was for some time visiting his friends and relations in Quincy, Illinois, and from there went east, and during the winter of 1860–61, he boarded with a Dr. Scott, in New York City. At Albany, he became interested in a patent stove, which he designed introducing in the south, and had a pattern made and shipped there for him. The rebellion at that time was about to commence, and he was open and outspoken in his sympathies with the southern people, and declared his purpose to go south and take up arms in its defense. His health seems to have not been very good, though the witnesses state that he was able to attend to business. About the 1st of March, 1861, he left his room at Dr. Scott's with the intention of going to Brooklyn and did not return. His clothes and valise were left in his room, but they were of little value.

His friends and relatives testify that they never saw or heard of him any more. Dr. Scott testifies that he received a

letter from him in the September following, but there was testimony going to show that he was mistaken, and it is evident that the jury must have thought so.   It appears also that Morris was indebted to Dr. Scott, and also to a lady for borrowed money; that previously he was in the habit of writing to his friends and relatives, but after his disappearance about the first of March, they never received any letters from him.

The foregoing is the substance of the testimony.   For the plaintiff, the court instructed the jury that, " if prior to the commencement of this suit Henry C. Morris had disappeared and had not been heard from by his friends and acquaintances for a term of seven years, then the law presumes that he is dead, and the jury will determine from all the evidence in the case at what time he died; and if the jury believe from the evidence that he died before June 8th, 1861, and that defendant was notified of his death, and furnished with such proof thereof, as the circumstances of the case would permit, and, also, that plaintiff has been appointed administrator of said Henry C. Morris' estate, then the plaintiff is entitled to recover in this action."

At the instance of the defendant, the court gave an instruction that " there is no evidence before the jury that the premium due June 8th, 1861, has ever been paid, therefore, if Henry C. Morris was living at that date, the policy became forfeited, and the plaintiff cannot recover in this case." And there was a refusal to declare that, " the plaintiff having not produced any evidence that Henry C. Morris died prior to June 8th, 1861, is not entitled to recover."

There was a verdict and judgment for plaintiff, and the defendant has prosecuted an appeal.

In relation to the presumption of death arising from mere absence, the rule at common law is well established.

Where a party has been absent seven years, without having been heard of, the only presumption then arising is, that he is dead; there is none as to the time of his death, as to whether he died at the beginning or at the end of any particular period during those seven years.   If it be important

to anyone to establish the precise time of such person's death, he must do so by evidence of some sort, to be laid before the jury for that purpose, beyond the mere lapse of seven years. (Best. Pres. Ev., § 140; Knight vs. Nepean, 5 Barn & Ad., 86; affirmed in Exch., 2 Mees. & Wel., 894; Spencer vs. Roper, 13 Ind., 333; *In re* Benham's trust L. R. 4 Eq., 415; Mc-Cartee vs. Campbell, 1 Barb., ch. 456.)

In Burr vs. Sim, (4 Whart., 150) Mr. Justice Gibson denied the common law rule as generally laid down, and stated the true doctrine to be that, " the presumption of death, as a. limitation of the presumption of life, must be taken to run exclusively from the termination of the prescribed period, so that the person must be taken to have then been dead, and not before." Whatever may be the true rule on this subject, all the authorities agree that when a party has been absent seven years since any intelligence has been received of him, he is in contemplation of law, presumed to be dead. This length of time may be abridged and the presumption applied earlier than seven years, by showing special facts and circumstances, which reasonably conduce to that end. But evidence of some sort will in all cases be necessary.

In White vs. Mann, (26 Me., 361) the court say : "When a person leaves his usual place of residence with an intention of returning to it, and continues to be absent for seven years, without being heard of, he is presumed to be dead. The time when such presumption will arise, may be greatly abridged by proof that the person has encountered such perils as might be reasonably expected to destroy life, and has been so situated that, according to the ordinary course of human events, he must have been heard of if he had survived."

In the King's Bench an action was on a policy of insurance on the life of L. Macleane, Esq., from the 30th of January, 1772, to the 30th of January, 1778. It appeared in evidence that about the 28th of November, 1777, Macleane sailed from the Cape of Good Hope, in the Swallow, sloop of war, which ship, not being afterwards heard of, was supposed to have been lost in a storm off the Western Islands. The

question was, whether Macleane died before the 30th of January, 1778. In order to establish the affirmative of that question, the plaintiff called witnesses to prove that the ship sailed from the Cape with Macleane; and several captains swore that they sailed the same day; that the Swallow must have been as forward in her course as they were on the 13th or 14th of January, the period of a most violent storm, in which she probably was lost; that the Swallow was much smaller than their vessels, which with difficulty weathered the storm. Lord Mansfield left it to the jury whether, under all the circumstances, they thought the evidence sufficient to convince them that Macleane died before the expiration of the time limited in the policy, adding that, if they thought it so doubtful as not to be able to form an opinion, the defendant ought to have their verdict. The jury found for the plaintiff. (Patterson vs. Black, 2 Park. on Ins., 919.)

Whoever finds it important to establish death at any particular period, must do so by some kind of evidence. The evidence need not be direct or positive; it may depend upon circumstances, but it should be of such a character as to make it more probable that the person died at a particular time, than that he survived. When a person is known to be alive at a certain time, there is a presumption of the continuance of his life, and, to overcome this presumption, evidence must be adduced tending to show at what particular period he died.

Mere absence, unattended with other circumstances, will not be sufficient. In Eagle's case, (3 Abb. Pr., 218) it was said that, if it was attempted to apply the presumption short of seven years, special circumstances would necessarily have to be proved; as for example, that at the last accounts the person was dangerously ill, or in a weak state of health, was exposed to great perils of disease or accident; that he embarked on board of a vessel which has not since been heard from, though the length of the usual voyage has long since elapsed. In all such cases, if the circumstances known are sufficient to authorize the conclusion, the decease may be

placed at a time short of seven years. It has been held in Iowa that, under certain circumstances, a presumption of death may be indulged in a period of less than seven years, without showing that the deceased was subject to immediate or particular peril. The facts in that case, as stated in the report, are, that the party on whose life the policy was issued, was a young man of exemplary habits, excellent character, of fair business prospects, respectably connected, and of the most happy domestic relations. He had the fullest confidence of his friends, and the entire affection of his wife, and was living in apparent happiness, with no cause of discontent with his condition, which would have influenced him to break the domestic and social ties with which he was so pleasantly bound to life. Visiting Chicago, September 25, 1866, upon business, he was last seen by an acquaintance on the corner of Lake and Clark streets in that city, about 3 o'clock P. M. of that day. No trace of him was afterwards discovered, though his friends made every effort to find him and ascertain the cause of his mysterious disappearance. A large reward was offered through the newspapers for any information that would lead to his discovery, either dead or in life. The detective police were employed to search for him without results. No tidings were ever received of him and not the faintest trace of the cause or manner of his disappearance was ever discovered.

He gave no intimation to any one of an intention to absent himself, and the latest declaration of his intentions was to the effect that he expected to leave Chicago the day of his disappearance, to join his wife at Dubuque.

He owed no debts amounting to any considerable sum and had made payments of small ones about the day of his disappearance. His valise, containing clothing and other articles commonly carried by travelers, was found at his hotel, and his hotel bill was unpaid. In the circuit court, the jury were instructed, that to raise a presumption of death from absence within a time less than seven years, it must be shown that the person alleged to be dead was subjected to some specific

peril, which might reasonably be supposed to have produced his death.

In the Supreme Court this instruction was declared to be wrong, and it was held, that evidence of character, habits, domestic relations, and the like, making the abandonment of home and family improbable, and showing a want of all those motives which can be supposed to influence men to such acts, may be sufficient to raise the presumption of death, or from which the death of one absent and unheard from, may be inferred, without regard to the duration of such absence. (Tisdale vs. Conn. Mut. Life Ins. Co., 26 Iowa, 170.)

With the rule laid down in the above case, we concur. The circumstances and situation of the party, his entire surroundings, his fixed home, his expressed intention of immediately departing for it, with his almost simultaneous disappearance, and the exhaustive search that was at once made, failing entirely to clear up or reveal anything in relation to the mystery of his disappearance, wove a net of circumstances from which it might well be inferred that his absence was solely attributable to his death. It may well be conceded that where a person is studious in his habits, attentive to his business, has a fixed and permanent residence, and is surrounded by those influences which are calculated to endear him to his home, suddenly and unaccountably disappears, a presumption may arise which would warrant a jury in finding that he was dead.

But will the circumstances of this case warrant the admission of any such doctrine? Morris had no family, he had no fixed or permanent place of abode. For years he had been residing in the south, being in different states, and engaged in different places. He told his relatives that he was going back to the south. He made arrangements to introduce a patent there. He was warm in his sympathies for the southern cause, and expressed his determination to take up arms in its defense. No intention was ever shown of staying in New York, or with his friends in the north. According to his declared design, he was going south, as thousands of others did in those times.

Conroy v. Vulcan Iron Works.

There can, therefore, be no analogy between this case and the Iowa case. The case, therefore, simply presents a sudden and unexplained absence on the part of. Morris, without being accompanied with any surrounding perils, and with his often repeated declaration that he intended to go to another part of the country where his sympathies and interest were centered. The law will now presume that he is dead, but there is no presumption that he died previous to the expiration of seven years from his disappearance, and there was no evidence of death prior to the 8th of June, 1861, to entitle the case to be submitted to the jury.

Wherefore, the judgment should be reversed and the cause remanded. Judges Napton and Sherwood concur. Judges Vories and Hough absent.