ESTATE OF ANNA E. LUESMANN, DECEASED.

[No. 12,770; decided October 10, 1892.]

**Death may be Presumed Within a Period Less than Seven Years** from the time of the last tidings or trace of an absentee, when the circumstances leave no other probable conclusion.

On September 21, 1892, H. H. Luesmann, the husband of Anna E. Luesmann, filed a petition for letters of administration upon her estate, wherein he averred that she died in San Francisco on or about June 24, 1890.

F. T. Duhring, for petitioner.

COFFEY, J. The testimony of the husband, the daughter, and of intimate friends of the family, established the facts:

Anna Elizabeth Luesmann, the wife of H. H. Luesmann, disappeared from her home, in this city and county, on the morning of June 24, 1890, and no trace of her has since been discovered, though every effort has been made to find her. A reward was offered through the newspapers for information that would lead to her discovery, and the police were notified and instituted a search, but without results; and great newspaper notoriety attended the disappearance of the lady.

Mrs. Luesmann was a woman of good habits and excellent character, and her married life was very happy. She had the full confidence of her friends, and the entire affection of her husband and little daughter and she had no cause for discontent with her condition which would have induced her to break the domestic and social ties with which she was so pleasantly bound to life.

There seemed to be but one cloud on her horizon, and that was the fact of the severe illness of her little daughter, Amalie, to whom she was entirely devoted, which illness has extended over a period of almost four months, and during which time she (the child) was often at the point of death. So slow was her recovery that the mother, wearied and worn in body and mind with the long watching over the bed of her loved one, despaired of her life, and her sorrow sat so heavily upon her that she gave up hope and said the child would die,

and if the child died she had no desire to survive. This was her oft-expressed and repeated assertion to her neighbors and friends. It was when this belief was most settled in her mind that she left her home forever, and, as her family and friends verily believe, sought to precede her beloved child to the land of the future by drowning herself in the waters of the bay.

At the time of her departure she was not dressed to travel, wearing an ordinary morning dress and slippers. Neither did she have her purse, the same, containing $30, being found in the house afterward, as were also her bank-books, while the funds which they represent have never been called for. No tidings of any kind have been received from her, and not the faintest trace of her has been discovered.

These facts being proved, counsel contends that they are sufficient to entitle petitioner to letters of administration upon the estate of decedent.

As to the sufficiency of the evidence:

"The general belief of a family, that a missing member is dead, is admissible in evidence, as in many cases it is not only the best, but the only evidence which can be produced of his death": Jackson v. Etz, 5 Cow. 319; Doe v. Griffin, 15 East, 393; 1 Greenleaf on Evidence, 2d ed., pars. 201, 574.

"When one who is studious in habits, attentive to business, with a fixed and permanent residence and pleasant domestic relations, suddenly disappears, these facts may warrant a jury in finding the death at the time": Hancock v. American Life Ins. Co., 62 Mo. 26.

"Death within a very recent time may be inferred from the circumstances of absence or disappearance. The presumption rests on the fact that it is strange that a man should absent himself without communicating with his friends. It is aided by whatever, in his situation, makes it more strange and impaired by whatever is easily credible": 2 Rice on Evidence, 1223.

"A jury may find the fact of the death of a party, from the lapse of a much shorter period than seven years unheard from, when the circumstances of the case raise the presumption of death. The age, state of health and habits of the absent party, and many other circumstances, may be shown

to aid or rebut the presumption of the continuance of life'':
Johnson v. Johnson, 114 Ill. 611, 55 Am. Rep. 883, 3 N. E.
232.

''There is no doctrine which in civil cases requires death
to be proved by any more conclusive or peculiar evidence than
any other fact material to recovery in an action. If the
testimony satisfies the court or jury passing on the facts,
and is reasonably sufficient and compels belief, the conclusion
is certainly lawful'': John Hancock Mut. Life Ins. Co. v.
Moore, 34 Mich. 42.

Tisdale v. Connecticut Mut. Life Ins. Co., 26 Iowa, 170, 96
Am. Dec. 136, was an action on a policy of insurance upon
the life of Edgar Tisdale, husband of plaintiff. There was
evidence at the trial tending to prove that the party upon
whose life the policy was issued was a young man of exem-
plary habits, excellent character, of fair business prospects,
respectably connected, and of the most happy domestic rela-
tions. He had the fullest confidence of his friends and the
entire affection of his wife, and was living in apparent hap-
piness, with no cause of discontent with his condition, which
would have influenced him to break the domestic and social
ties with which he was so pleasantly bound to life. Visiting
Chicago, September 25, 1866, upon business, he was last seen
by an acquaintance on the corner of Lake and Clark streets,
in that city, about 3 o'clock P. M. of that day. No trace of
him was afterward discovered, though his friends made every
effort to find him and ascertain the cause of his mysterious
disappearance. A large reward was offered through the
newspapers for information that would lead to his discovery,
either dead or in life. The detective police were employed to
search for him without results. No tidings have been re-
ceived of him, and not the faintest trace of the cause or man-
ner of his disappearance has been discovered. He gave no
intimation to anyone of an intention to absent himself; and
the latest declaration of intentions was to the effect that he
expected to leave Chicago, the day of his disappearance, to
join his wife at Dubuque. He owed no debts amounting to
any considerable sum, and had made payment on some small
ones about the day of his disappearance. His valise, contain-
ing clothing and other articles commonly carried by travelers,

was found at his hotel. His bill there was unpaid. Letters of administration, issued upon his estate December 18, 1866, were admitted in evidence.

In his opinion Beck, Judge, spoke as follows: "The questions for determination in this case relate to the correctness of the instructions given by the court to the jury. The first instruction announces the rule that the death of an absent person cannot be presumed except upon evidence of facts showing his exposure to danger, which probably resulted in death, before the expiration of seven years from the date of the last intelligence from him; and that evidence of long absence without communicating with his friends, of character and habits making the abandonment of home and family improbable, and of want of all motive or cause for such abandonment which can be supposed to influence men to such acts, is not sufficient to raise a presumption of death. The instruction is not in accordance with the true rule of evidence, and is erroneous. The error is evidently the result of an improper construction of the familiar rule of evidence that, when a person has not been heard of for many years, the presumption of duration of life ceases at the end of seven years (2 Starkie on Evidence, 361), and an attempt to apply it to the facts in this case. The rule by no means limits the presumption of death to an absence of the person whose existence in life is in question without tidings from him for the space of seven years, nor does the modification of the rule laid down in the cases cited by counsel, that such absence for a shorter period, if the person is shown to have been in peril, will raise a presumption of death, exclude evidence of other facts and circumstances which tend to establish the probability of death."

It will be observed that the opinions quoted from above all go to show that death may be presumed within a period less than seven years from the time of the last tidings or trace of the absentee, when the circumstances and conditions of the absent one leave no other probable conclusion. Reference is omitted to the more frequent cases where the absentees were aboard of ships which were never heard from after leaving port.

The fact is important to note that in the Tisdale case letters of administration were granted in less than three months after the disappearance of Tisdale, while in the application at bar more than two and a quarter years have elapsed since the decedent was last seen. Particular attention is directed to this Tisdale case because of the many points of resemblance to the one at bar, and for that reason it has been more fully quoted than any other.

It is true that these opinions were given by tribunals other than those of California, but we have been unable to find any similar California case. There is only one case where the circumstances were similar to the one at bar where the opinion ran contrary to those quoted above, and that was the Succession of Vogel, 16 La. Ann. 139, 79 Am. Dec. 571; but after careful examination it is thought that the features of that case, as well as the law of Louisiana, are distinguishable from the case at bar.

Upon the evidence, and for the reasons hereinabove set forth, it is concluded that the petitioner is entitled to letters of administration.

Presumptions of Death arising from absence are. discussed in the note to Estate of Kustel, ante, p. 4.