MARY BERGMAN, Non Compos Mentis, by MARION BERGMAN, her Guardian, Respondent, v. SUPREME TENT, KNIGHTS OF THE MACCABEES OF THE WORLD, Appellant.

St. Louis Court of Appeals.  Opinion Filed April 6, 1920.

1. **DEATH: Disappearance: Evidence: Presumptions Against Suicide and Continuance of Life Until Seven Years Absence Rebuttable.** The presumptions that a man lives after disappearance until after the seven-year statutory period lapses and the presumption against suicide can be overcome by evidence.

2. ———: ———: ———: ———: **Burden of Proof.** In an action based on a benefit certificate where insured had disappeared within less than the seven-year period, it was incumbent upon plaintiff, in view of the presumption that insured still lived, to present evidence which tended to show that he was dead, and to make it appear to the jury that it was more probable that he was dead than otherwise.

3. **INSURANCE : Death. Disappearance: Evidence: Whether Insured was Dead Question for the Jury.** In an action based on a benefit certificate where insured had disappeared within less than the seven-year period, evidence of facts and circumstances from which the jury could infer that insured was dead at the time the cer-

tificate was canceled for nonpayment of dues *held* sufficient to make a case for the jury, and this without the aid of letters of administration and a letter from insured threatening suicide, which were objected to as improper evidence.

4. DEATH: Disappearance: Evidence: Letters of Administration Prima-facie Evidence of Death: Admissibiiity.   In an action based on a benefit certificate where insured had disappeared within less than . the seven-year period, it was not error to admit in evidence letters of administration on insured's estate, such letters being prim-facie evidence of the death of the person on whose estate they. are issued.

5. EVIDENCE: Death: Disappearance: Letter. Threatening Suicide Not Admissible as Res Gestae   In an action based on a benefit certificate where insured had disappeared within less than the seven-year period, a letter from insured to his children stating, "When you read these lines I am no more," not being accompanied by any act which it may be said to characterize, and was not a part of *res gestae*, should not have been admitted as evidence to prove death.

6. ——— : ——— : ———: Letter Threatening Suicide Not Admissible to Show Attitude Toward Family.  In an action based on a benefit certificate where insured had disappeared within less than the seven-year period, a letter deliberately prepared and lacking the element of spontaneity, and being wholly different from a sponta-neous statement as to the condition of insured's health or his feel-ing towards his family made at a time when there could be no possible motive except an honest statement of a feeling or a con-dition, *held* inadmissibe for any purpose.

Reynold, P. J., dissents, and thinks it was not error to admit in evi-dence the Bergman letter and that the judgment should be affirmed.

7. INSTRUCTIONS: Death: Disappearance: Instructian Should not Assume Absence Unexplained.   In an action based on a benefit certificate where insured had disappeared within less than the seven-year period, in view of the evidence, an instruction should not assume that the absence of insured was unexplained, but plainly state that if his absence was unexplained then the jury might take into consideration the facts and circumstances sur-whether he was dead or alive.

8. APPELLATE PRACTICE: Instructions: Assignment of Error Not Briefed Assumed Abandoned.   Where an alleged error in refusing instructions asked by defendant is not briefed by counsel, it will be assumed that it is abandoned.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. Wilson A. Taylor,* Judge.

REVERSED AND REMANDED.

*R. P. & C. B. Williams* for appellant.

*D. D. Aitkin* of Counsel.

(1) There was a cause and motive for the disappearance of the assured consistent with a continuation of his life. The plaintiff offered no evidence sufficient to overcome the presumption of the continuation of life and to authorize the jury to find the death of the assured prior to seven years' absence. The demurrer to the evidence, therefore, should have been sustained. Hancock v. Life Ins. Co., 62 Mo. 26; Lancaster v. Life Ins. Co., 62 Mo. 121; Lawson on Presumptive Evidence, page 251, and authorities cited; Kranz v. Great Council, 13 Mo. App. 341; Tisdale v. Ins. Co., 62 Iowa 170; Seeds v. Grand Lodge, 61 N. W. 411; Whiting v. Nichols, 46 Ill. 230; Reedy v. Milligen, 155 Ill. 536; Bailey v. Bailey, 36 Mich. 181; Smith v. Knowlton, 11 N. H. 191; Clark's Executors v. Canfield, 15 N. J. Eq. 119; In re Eagle, 3 Abb. Proc. 218; Burr v. Sim, 4 Whart. 150; Northwestern Mutual Life Ins. v. Stephens, 71 Fed. 258; Flood v. Growney, 125 Mo. 262. (2) The court erred in admitting in evidence the letter written by the assured to his chlidren, marked "Plaintiff's Exhibit D." A declaration of intention to commit suicide, unaccompanied by any act, and no part of the *res gestae,* is not admissible in evidence for any purpose. Greenacre v. Filby, 114 N. E. 532; Nordgren v. The People, 211 Ill. 425, 71 N. E. 1042; Siebert v. The People, 143 Ill. 571, 32 N. E. 431; The Commonwealth v. Felch, 132 Mass. 22; 2 Bishop on Criminal Procedure, par. 623. (3) The court erred in admitting in evidence the letters of administration taken out by the plaintiff on the estate of the absentee. The defendant was not a party to that proceeding and it is only in cases where the administrator is a party to the suit that the letters of administration are admissible in evidence as being prima-facie evidence of death. Mutual Benefit Life Ins. Co. v. Tisdale, 91 U. S. 238, 23 Law Ed. 314; Hegler v. Falkner, 153

U. S. 109, 38 Law Ed. 653; Jones on Evidence, sec. 609, 626. (4) It was prejudicial and misleading for the court to assume, as was done in instruction No. 1 given for the plaintiff, that the conditions and circumstances of the disappearance constituted an "unexplained" disappearance. Defendant's contention was that the conditions mentioned in the instruction fully accounted for and explained the absence of Bergman upon a reasonable theory consistent with continued existence. (5) All the legal presumptions are against the theory of death by suicide. There is no evidence of any other manner of death in the record, and no legal evidence of that manner of death. Brunswick v. Standard Accident, 213 S. W. 50; Lawson on Presumptive Evidence, p. 241; Guardian v. Hogan, 80 Ill. 35; Germain v. Brooklyn, 26 Hun. 604; Continental v. Delfeuch, 82 Pa. St. 235; See Point 2.

*Muench, Walther & Muench* for respondent.

(1) The letters of administration upon the estate of Joseph Bergman were properly admitted and were prima-facie evidence of the fact of his death. Lancaster, Admr v. Washington L. Ins. Co. of N. Y., 62 Mo. 121, 128; Davis v. Gillilan, 71 Mo. App. 498; Tisdale v. Conn. Mut. L. I. Co., 26 Iowa, 170; In re Ketcham's Est., 5 N. Y. Supp. 566; Cunningham v. Smith's Adm., 70 Pa. St. 458; Jeffers v. Radcliff, 10 N. H. 242; Newman v. Jenkins, 10 Pick. 515; Munro v. Merchant, 26 Barb. 383; Scibert v. True, 8 Kans. 52; French v. Frazier, 7 J. J. Marsh, 425; Ruoff v. Bank, 82 N. Y. Supp. 881; Bacon on Life and Acc. Ins. (4 Ed.), sec. 647; 17 Corp. Jur., 1177. (2) The letter written by insured to his children, marked "Plaintiff's Exhibit D," was admissible as part of the *res gestae.* Carpenter v. Supr. C'l L. of H., 79 Mo. App. 597; Bradley v. Modern Woodmen, 146 Mo. App. 449; Richey v. W. O. W., 163 Mo. App. 235; Springmeyer v. Woodmen, 144 Mo. App. 486; Mut. L. I. Co. v. Hillmore, 145 U. S. 285; Travelers Ins. Co. v. Sheppard, 85 Ga. 751; Sheldon v. Ferris, 45

Barb. 128; Samberg v. K. O. T. M., 158 Mich. 568; Bacon on L. and Acc. Ins. (4 Ed.), sec 647. (3) Instruction No. 1 is a correct statement of the law and is in substantially the form approved by this court in Winter v. Supreme Lodge K. of P., 101 Mo. App. 550. (4) The plaintiff's evidence made out a strong prima-facie case of death of the insured prior to the date of his suspension from defendant Order. Plaintiff "was required merely to furnish proof which tended to show that fact and to make it appear to the jury more probable or credible than otherwise; that is to say, by a preponderance of the evidence." Winter v. Supreme Lodge K. of P., 96 Mo. App. 1 and 101 Mo. App. 550; Carpenter v. Sup. C'l L. of H., 70 Mo. App. 597; Springmeyer v. W. O. W., 163 Mo. App. 338; Bradley v. Modern Woodmen, 146 Mo. App. 449; Lancaster v. Washington L. I. Co., 62 Mo. 121; Tisdale v. Ins. Co., 26 Iowa 170; Boyd v. L. I. Co., 34 La. Ann. 848; John Hancock M. L. I. Co. v. Moore, 34 Mich. 42; Supr. C'l C. B. L. v. Boyle, 10 Ind. App. 301; Harvey v. Fidelity & Casualty Co., 200 Fed. 925; Garden v. Garden, 2 Houst 574; Cox v. Ellsworth, 18 Nebr. 664; Coe v. Nat. C'l K. & L. of S., 96 Neb. 130—L. R. A. 1915, p. 744—note; Bacon on L. and Acc. Ins., (4 Ed.), sec. 647; Lawson on Presumptive Ev., p. 287.

BIGGS, C.—A suit based on a benefit certificate issued upon the life of Joseph Bergman by the Knights of The Maccabees of the World, a fraternal beneficial corporation. The certificate was payable on the death of Joseph Bergman to his wife Mary. The beneficiary being *non compos mentis* the suit was instituted in the name of her Guardian, Marion Bergman.

No controversy arises over the pleadings. The petition is in the usual form. The answer a general denial.

The only issue arising on the trial was whether the insured Joseph Bergman, was dead on the 1st day of June, 1915, at which date the certificate was forfeited for non-payment of dues.

Upon a trial there was a verdict and judgment for plaintiff for the full amount of the certificate. After

the customary steps, the defendant has brought the case here for review, assigning error as follows:

*First.* In overruling the defendant's demurrer to the evidence offered at the close of plaintiff's case and also at the close of the whole case.

*Second.* In admitting in evidence a letter from the insured received on May 10, 1915, in which he intimated an intention to take his own life.

*Third.* In admitting in evidence letters of administration issued by the Probate Court on the estate of Joseph Bergman, the letters being offered as evidence of his death.

*Fourth.* In giving the main instruction requested by the plaintiff.

*Fifth.* And in refusing instructions requested by the defendant.

The facts developed by the evidence are substantially these:

Joseph Bergman emigrated to this country from Austria some thirty years before the trial. He was a musician by profession, having played the French horn and to some extent the violin. On May 10, 1915, the date of his disappearance, he was about 65 years of age, and for some years prior to that time he had not worked at his profession but occupied the position of treasurer of the Musicians' Mutual Benefit Association, of which he was a member in good standing, and he was also manager and treasurer of the "Aschenbroedel," a social organization of musicians in the City of St. Louis.

Bergman's wife had been in the City Sanitarium for about nine years, and he lived with his three daughters and one son in a house which he owned, but on which there was a mortgage of $2500 not due. He also owned some vacant property subject to an unmatured mortgage of $700 or $800. He was obligated to a friend on his unsecured note for $100. He was not being pressed for the payment of any of these debts. It appeared that the interest was due on the mortgages the following June. There was evidence that his relations with his family were always pleasant and agree-

able, and his daughter was unable to explain the statement indicating the contrary and contained in a letter received from him after the disappearance.

It was Bergman's custom to leave his home in the morning between 8 and 9 o'clock, go to the club rooms on Pine Street, return about 3 o'clock for his dinner and go back to the club about 4 or 4:30, where he would remain until late at night. He was a quiet man, having little to say. For several days prior to his disappearance he was unusually quiet, and said he was not feeling very well. On Sunday May 9th he followed his usual daily routine. His family last saw him about 4 o'clock that afternoon, when after finishing his dinner he retired to his room for a few minutes and then left the house for the club, saying the usual goodbye to his daughters in the house and when on the street he called his son from his play to bid him goodbye. He took no extra clothing, but carried with him his favorite violin. He owned 18 or 19 violins and 3 or 4 French horns. Just before he left he gave his daughter who was acting as housekeeper, between $40 and $50, which was a greater amount than he usually gave her.

Bergman evidently failed to go direct to the club rooms, as he did not arrive there until about 7 o'clock. He was seen there that evening by friends who noticed nothing unusual about his demeanor. He performed his usual duties as manager and left there that night about 11:30 carrying his violin. He was never seen or heard from again. The next morning his family noticed that his room had not been occupied and upon investigation found that his desk in his room was unlocked, which was unusual, and his insurance papers and deeds to his properties were laid out on the desk. His watch and his bill-book or card case were also found in the desk, as was also a memorandum in his handwriting to see Eugene Koenig, Attorney, about the deed to the property. A further examination of the room disclosed that Bergman took no clothing or other property with him except the one violin. No money was found in his desk and he had none deposited in bank.

Upon being informed that Bergman had not been at the club rooms that day, his daughter notified the Police Department and a detective was assigned to the case. The Police sent out a description and a photograph of the missing man, which was circulated among the officers of the department and published in the Department Bulletin which circulated in St. Louis and neighboring towns. The National Association of Musicians were holding a convention in California, and word was sent there of his disappearance. His daughter sent letters to friends in California, and also wrote a brother of Bergman's in Austria. No answers were ever received to any of the letters and they were not returned to the writer, although the envelopes contained directions to return if not delivered. No trace of Bergman was ever found, either dead or alive.

In the afternoon of May 10, the day following the disappearance, there was received by his family through the mail a letter in Bergman's handwriting as follows:

"Dear Marion, Ema & Joe & Anna—When you read these lines I am no more. I have struggled hard against all odds but without results. I never had no cheer or help, only uncivil answers and sneers about the properties. You see E. Koenig, attorney at 4th. & Market St., Granite Building. He is a very good man and will help you to hold the properties. My desk is open. The papers are in the black book. There is the gold watch and chain. You keep that for Joe or sell it if necessary. Sell all the instruments. Keep the 2 fiddles for Joe. My love to all. I could not keep up any longer.

God bless you all. Help Joe if you can."

Your Father

The envelope in which the letter was received was stamped by the postal authorities May 10, 1915—8:30 A. M. The defendant objected to the admission of the letter, contending that it was merely the expression of an intention to commit suicide, without any evidence of the fact of suicide, and as there was no evidence of the body being found, the letter was a simple declaration

of an intention to commit suicide without more and was incompetent to prove the death.

Plaintiff proved by four of Bergman's associates who were also officers of the Musicians Union and his friends for many years, that they had never heard of Bergman since he disappeared, although they had made no effort to find him.

Plaintiff introduced in evidence over the objection of the defendant for the purpose of making out a prima-facie case of death, the letters of administration issued on Bergman's estate. These letters recited the death of Bergman on May 10, 1915. The ground of defendant's objection was that the letters are incompetent to prove any issue in the case; that the proceeding in the probate court is *ex parte* and the defendant in this case was not a party to that proceeding, and that the letters are inadmissible in this sort of a case.

It is undisputed that at the time of Bergman's disappearance he was short in his accounts as treasurer of the Musicians' Mutual Benefit Association in the sum of about $1800. There is a conflict in the evidence as to whether the major portion of his shortage occurred within the month prior to his disappearance or whether it existed prior to April 1, 1915. The Financial Secretary of the organization collected the dues from the members quarterly, and during the month of April and prior to April 24th, he turned over to Bergman as treasurer $1123.25. This amount was not entered by Bergman on his books. It appeared that auditors had audited the books of the secretary and were to begin the examination of Bergman's books on Monday May 10, the day after he disappeared. This was the first time that public accountants had examined the books. Previously a committee from the membership of the Order had made the examination.

The auditor testified that he found a shortage in Bergman's books amounting to $1794.10; that on April 1, 1915, his books showed a balance on hand of $2264.76; that between April 1st and May 1st Bergman had paid

out warrants aggregating $1475.17, and that the sum of $1123.25 received from the secretary during April was not entered on the books. In arriving at the amount of his shortage the auditor took into account this item of $1123.25, as the secretary had Bergman's receipt for that amount. It appeared from the auditor's examination that on May 8, 1915 just before the disappearance, Bergman's balance in the bank as treasurer was $86.83. In addition to the sum of $1475.17 paid out in April, the books show that Bergman disbursed in May before he left $304.01. Inasmuch as these figures show that Bergman paid out in April and May more then he received it is evident that as far as his books are concerned his shortage on April 1, 1915, must have been greater than when he disappeared on May 10th following. The evidence is cloudy as to his bank balance on occasions other than May 8th, when it was $86.83. His bankbook was not found. The books of the bank were not before the court.

It appeared that there were discrepancies in the books of the club, but no actual shortage could be traced to Bergman as manager and treasurer of the club he took in daily certain sums from the restaurant and bar. After Bergman's disappearance there was found in the safe the receipts of the previous day, but the exact amount is not shown by the evidence.

Mr. Koenig, the attorney, had business relations with Bergman and controlled the mortgage on his home. In an interview with Bergman in February prior to his disappearance, Bergman said he was having a little trouble at home, but just what he meant the witness did not know, and that Bergman also stated that if he could get rid of his home that he thought he might leave, and that his recollection of the conversation was that Bergman meant that he would leave St. Louis, but witness was not sure whether he used the expression St. Louis or not; that Bergman did not complain about the way his daughters were treating him at home, and in reference to his trouble the witness was impressed with the fact

that his trouble was a question arising out of money affairs and was not in the nature of quarrels with his family. The complaint Bergman made to the witness was in regard to his home expenses which were larger than he thought they should be and that he had quite a bit of trouble in managing to make both ends meet.

It was admitted that Bergman was indicted by the Grand Jury of the City of St. Louis on January 11, 1916, on the charge of embezzlement and that a warrant was issued on the indictment. This indictment was procured through the efforts of a Surety Company that was on Bergman's bond and had to make good his shortage. At the time the indictment was returned the newpapers gave publicity of the fact and also published his picture.

We have been favored with excellent briefs on both sides of this case. Absent the letters of administration and Bergman's letter in which he says he is "no more" appellant contends there was no evidence to show that Bergman's disappearance was inconsistent with the continuation of life, and hence there was no case for the jury. Appellant asserts that the only reasonable inference to be drawn from the evidence is that Bergman was a defaulter and fled from justice. Respondent answers that a reasonable explanation of his disappearance is that he carried out the intention expressed in his letter and destroyed his own life.

The law presumes that a man lives after disappearance until the seven years statutory period elapses. After such period there is a presumption that the man is dead. It is the experience of mankind that one holds on to his life as long as possible conseqüently there is a presumption against suicide. These presumptions, however, can be overcome by evidence, and as said by LAMM. J., in the case of Mockowik v. Railroad, 196 Mo. 1. c. 571, 94 S. W. 256, presumptions are looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts.

The demurrer presents the question as to whether the evidence consisting of circumstances surrounding

the disappearance of Bergman was such that reasonable minds might differ on the question of whether Berg-man's absence without death was probable. It was incumbent upon plaintiff in view of the presumption that Bergman lived, to present evidence which tended to show that he was dead and to make it appear to the jury that it was more probable that he was dead than otherwise.

Appellant relies much upon the case of Hancock v. Insurance Company, 62 Mo. 26.

In the case of Springmeyer v. W. O. W., 163 Mo. App. l. c. 347, 143 S. W. 872, where a like question was involved, this court says:

"There is no doubt that the circumstances of a case may not warrant the submission of the probability of death or the improbability of life to the jury. Such was held to be the case in Hancock v. Ins. Co., supra, where it appeared that the insured was, to a large degree, a wanderer with no family and no fixed and permanent place of abode. He had no ties to bind him to New York, where his relations dwelt and did have an incentive and had expressed an intention to go to the indefinite 'South.' But it would seem that for the trial court to refuse to submit the question to the jury, the insufficiency of a showing made to create the necessary improbability of life's continuance, must be so apparent that reasonable minds would not differ concerning such insufficiency. When the evidence is such that the question becomes dependent upon shades of character and condition, or degrees of affection or of strength of attachment, or of the comparative controlling influences of different affections or different attachments, and reasonable minds may well differ as to absence without death being probable under the circumstances disclosed, the question should be submitted to the jury."

The case of Winter v. K. of P., 96 Mo. App. 1, 69 S. W. 662, and 101 App. 550, was similar in many respects to the instant case, and a like contention was there made that there was no evidence warranting the submission of the case to the jury. This court held

otherwise on the authority of Tisdale v. Insurance Company, 26 Iowa, 170, approved in Hancock v. Ins. Co., 62 Mo. 26, and in Lancaster v. Ins. Co., 62 Mo. 121.

In a number of jurisdictions the rule is laid down that the death of an absent person, unheard of, cannot be inferred short of seven years unless at the time of disappearance the person was in contact with a specific peril. In Missouri the "specific peril" doctrine has not been adopted. Here it is not necessary that the absent person should have been in contact with a specific peril and the death may be inferred where the circumstances of the disappearance are inconsistent with a continuation of life. [Winter v. K. of P., supra; Carpenter v. L. of H., 70 Mo. App. 597; Bradley v. Modern Woodmen; 146 Mo. App. 449, 124 S. W. 69; Lancaster v. Insurance Company, supra; Tisdale v. Ins. Co., supra.]

From the record before us there was evidence of facts and circumstances from which the jury could infer that Bergman was dead on June 1, 1915. The jury could infer from the evidence the following:

1. That Bergman was happy in his home life.

2. That he suddenly disappeared on May 9, 1915, and at the time of trial October 9, 1916, had not been seen or heard from, although a reasonable effort was made to find him.

3. That he left without taking with him any clothing except what he was wearing and that he took no money with him. The day's receipts from the club were found in the safe and the jury could believe from the evidence that the shortage in his accounts was an old one and that he did not take with him the $1123, turned over to him by the secretary of the union during the month of April, as he had disbursed more than that amount during April.

4. That the purpose of taking his favorite violin was not to use it in his profession as a musician, but for the purpose of carrying it with him to his death. There was evidence that when active in his profession he play-

ed the French horn and not the violin, and that the violin was the instrument he played in his early life.

5. That when he realized his shortage would be dis-covered by the auditors he concluded to end his own life in order to avoid the humiliation of an exposure.

On the other hand there are a number of facts and circumstances which indicate that Bergman ran away from the exposure of his defalcation and may be in hiding. It could be found from the evidence that Bergman took with him the funds of the association. There is evidence that he had a hard time making both ends meet in the matter of living expense, and said to Mr. Koenig that if he could sell his property he might leave. There are a number of other circumstances in the evidence that indicate that Bergman may be alive and if the jury's verdict was for defendant there would be ample evidence to support it.

Under the rule of law as adopted in this State in the authorities cited, supra, we think this was a case for the jury and this without the aid of the evidence objected to by defendant, being the letters of adminis-tration and the letter from Bergman received May 10th. If either of these documents are properly in evidence, then the case was clearly for the jury.

As to the other questions. First, were the letters of administration proper evidence in a case of this kind to prove the death? The grant of letters in the probate court is an *ex parte* proceeding and in which the defend-ant had no voice. The letters say that Bergman died on May 10, 1915, and were admitted on the authority of Lancaster, Admr. v. Ins. Co., 62 Mo. 121. That case on the point referred to has not been criticised and was followed by the Kansas City Court of Appeals in the case of Davis v. Gilligan, 71 Mo. App. 498.

Appellant admits that the letters are admissible in a case where the administrator sues in his representa-tive capacity for the purpose of establishing his right to maintain the action, but contends that in a case like the present one where the administrator is not a party

the letters are inadmissible as evidence of the death of a person. Appellant's counsel cites many authorities from other jurisdictions to substantiate his proposition. For instance, the case of Mutual Benefit Life Ins. Co. v. Tisdale, 91 U. S. 238; Carroll v. Carroll, 60 N. Y. 121; Marks v. Emmigrant Industrial, 107 N. Y. Supp. 491, and other cases. These cases are well considered decisions and lay down the positive rule that letters of administration are not admissible to prove the death of a person where the administrator is not a party. In the opinion of the writer these decisions are sound in principle. A jury is very liable to consider the solemn declaration of a court to the effect that a man is dead, not as slight evidence of that fact to be easily overcome, but even as more than prima-facie evidence, namely, conclusive evidence of such fact. However that may be if our Supreme Court has decided to the contrary we cannot be concerned about another rule of law or about what other courts have held.

The Lancaster case, supra, was a suit on an insurance policy. The question involved was whether the insured was dead, which fact was proved by circumstances surrounding the disappearance of the insured and the letters of administration. The Supreme Court held that the letters were proper evidence tending to establish the death and said:

"Letters of administration, according to all American authorities we have examined, are prima-facie evidence of the death of the person on whose estate they are issued."

The Supreme Court in this Lancaster case in nowise limits the purpose for which the letters are admissible as for the purpose alone of establishing the right of plaintiff to sue, but says they are admissible to prima-facie establish the death of the insured.

We accordingly must hold that it was not error to admit in evidence the letters of administration on the estate of Joseph Bergman.

A vexing question is presented by the action of the trial court in admitting in evidence the letter written by Bergman to his family in which he said "When you read these lines I am no more." The evidence was admitted on the theory that it was a part of the *res gestae* The all important fact was whether Bergman was in fact "no more." The more important the fact the more important that it be established by proper evidence. This if competent, would have constituted the only direct evidence of the fact that Bergman took his own life. All the other evidence is circumstantial and relates to the facts surrounding the disappearance. The statement in the letter indicates a then present intention on Bergman's part to later commit suicide. In saying that "When you read these lines I am no more" he could only have meant that he then intended to take his own life before the letter would be received. The only act to accompany such a declaration is the act of suicide and not the act of disappearance. If the statement was explanatory of why he was leaving it would be clearly admissible. If the death was admitted or established by other evidence the declaration would be competent to prove self destruction.

There is a well settled rule of law admittedly correct by both counsel in the case which reads thus: "A bare declaration, no part of the *res gestae* and unaccompanied by any act which it may be said to characterize, is unreliable and incompetent to prove any issue." Where is the act that accompanied the statement of Bergman that he was "no more?" There is no act. The statement characterized no transaction. The disappearance could not be treated as the act the statement characterizes, because the statement is one of death by suicide not a disappearance. What is the *res gestae?* As the declaration relates only to the act of self destruction, clearly the *res gestae* in this case is that act.

The cases relied on by respondent as justifying the admission of the letter are distinguishable from this case.

For instance, in Carpenter v. Supreme Council, 79 Mo. App. 597, the threats of suicide were admitted, but they were accompanied by acts pre-preparatory to their execution. In that case the insured when last seen was in contact with a specific peril. What was said by the court in that case indicates that the declarations of the insured to the effect that he was going to jump in the river would not have been competent except for the acts attending them and looking to their execution.

Also in Bradley v. Modern Woodmen, 146 Mo. App. 428, 124 S. W. 69, the court admitted in evidence statements made by the insured at the time of leaving as to the purpose of his trip and when he would return. There the statements gave a reason for leaving home. The act accompanying the statement was the act of leaving. Bergman's statement contained in the letter does not relate to a disappearance but to the act of death, by Bergman himself. Bergman's statement was not a spontaneous part of the act of self destruction.

In the case of Richey v. W. O. W., 163 Mo. App. 235, clearly the letter written by the deceased to his wife was admissible, as it accompanied the act of sui- cide. The insured in that case was found lying dead in the barn with the letter to his wife pinned to his coat, in which letter he stated that he was sorry to leave but felt impelled to do so. There the question was whether the insured committed suicide.

It is the law of this State that a declaration by an alleged testator to the effect that he made a will or in- tended to make one is not competent to prove that fact unless the declaration was made at the time the will was executed. If made at the time of the act of execution it would be a part of the *res gestae* and admissible, other- wise the declaration would be mere hearsay. [Gibson v. Gibson, 24 Mo. 234; Walton v. Kendrick, 122 Mo. l. c. 518, 27 S. W. 872.]

In the case of State v. McCoy, 111 Mo. 517, 20 S. W. 240, the defendant was on trial for murder and attempt- ed to put in evidence a threat which the deceased had

declared was made to her by a third person to the effect that he would come from Canada and kill her. This evidence was held in admissible. as it was a bare declaration not connected with any act, was not a dying declaration and not a part of the *res gestae*.

Reference is made to the following cases as being analogous; Greenacre v. Filby, 114 N. E. (Ill.), 532; Nordgren v. The People, 211 Ill. 425; Seibert v. The People, 143 Ill. 571; Commonwealth v. Felch, 132 Mass. 22.

We are of the opinion that the declaration of Bergman contained in the letter that he was "no more," was not accompanied by any act which it may be said to characterize, and was not a part of the *res gestae* and should not have been admitted as evidence to prove death.

We do not think what has been here said conflicts with the ruling of the Supreme Court in the case of State v. Ilgenfritz, 263 Mo. 615, 173 S. W. 1041. In that case the point at issue was the cause of Ilgenfritz's death, whether he was murdered or committed suicide. The fact of death was admitted, and consequently the declaration of Ilgenfritz threatening to commit suicide were admissible as a part of the *res gestae*.

Plaintiff's counsel assert that the letter if not admissible to prove the death was admissible as a circumstance surrounding Bergman's disappearance and as showing his mental condition at the time and his feeling and mental attitude toward his family. The letter was a deliberately prepared document lacking the element of spontaneity, and was wholly different from a spontaneous statement as to the condition of his health or feeling toward his family made at a time when there could be no possible motive except an honest statement of feeling or condition.

As the only issue arising was whether Bergman died at or about the time of his disappearance, we think the letter inadmissible for any purpose. As said by Mr. Greenleaf, such a declaration if not a part of the

*res gestae,* is unreliable and incompetent to prove any issue.

We are not impressed with appellant's criticism of the man instruction given at the request of plaintiff. As there is to be another trial it would be well for the court not to assume that the absence of Bergman was unexplained, but let it be plainly stated that if his absence was unexplained, then the jury might take into consideration the facts and circumstances surrounding his disappearance in determining the question as to whether he was dead or alive.

The alleged error in refusing instructions asked by defendant is not briefed by counsel, and we assume that it is abandoned.

For the error in admitting in evidence the letter from Bergman, the Commissioner recommends that the judgment be reversed and the cause remanded for a new trial.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded for a new trial.

*Allen* and *Becker, JJ.,* concur; *Reynolds, P. J.,* dissents and thinks it was not error to admit in evidence the Bergman letter and that the judgment should be affirmed.